EPF CORPORATION, Petitioner-Respondent,

VAL AL GREENHOUSES, INC., Ener-Con, Inc., Charles Tiede, Jr., Luna Tiede and Associated Milk Producers, Inc., Petitioners,

v.

Roger C. PFOST, a/k/a Roger C. Pfost and Robert Pfost, Respondent-Appellant,

COMMONWEALTH LAND TITLE COMPANY, George Simonelic and Karen Simonelic, Intervenors-Appellants.

Court of Appeals

*No. 96–0006. Oral argument January 30, 1997.—Decided April 2, 1997.*

(Also reported in 563 N.W.2d 905.)

On behalf of the respondent-appellant and the intervenors-appellants, there were briefs and oral argument by *Robert F. Johnson,* of *Cook & Franke, S.C.,* of Milwaukee.

On behalf of the petitioner-respondent, there was a brief and oral argument by *Scott V. Lowry* of Waukesha.

Before Brown, Nettesheim and Anderson, JJ.

NETTESHEIM, J.   Commonwealth Land Title Company appeals from a circuit court order rejecting its motion to set aside a sheriff's sale of certain real estate formerly owned by Roger C. Pfost. EPF

Corporation (EPF), which held assignments of various judgments docketed against Pfost, executed on the judgment liens and purchased the property at the sheriff's sale. Later, Commonwealth redeemed the property pursuant to the title insurance policy which it had issued to the present owners. In this action, Commonwealth sought to recoup its redemption payment.

Pfost had previously discharged the debts underlying the judgments in bankruptcy. In 1990, he sought and obtained a circuit court order pursuant to § 806.19(4), STATS., satisfying some, but not all, of the judgments. In this case, Commonwealth argues that the 1990 order should be broadened to satisfy the judgments not addressed in that proceeding.

Alternatively, Commonwealth argues that the sheriff's sale was invalid because the real estate sold at the sale was Pfost's former homestead. Commonwealth contends that when Pfost sold the real estate to a third party after the bankruptcy, the sale (and the later sale to Commonwealth's insured) was free and clear of the judgment liens.

The circuit court rejected both arguments. We agree with both rulings. We affirm the order.

## *FACTS AND PROCEDURAL HISTORY*

The facts and procedural history of this case are lengthy and involved.

The principal actor in this case is Roger Pfost who originally purchased the real estate as his homestead during the 1970s. In August 1989, Pfost filed bankruptcy. On his bankruptcy schedules, Pfost listed his various debts, including four judgments in favor of Val Al Greenhouses, Inc., Ener-Con, Inc., Charles and

Luna Tiede, and Associated Milk Producers, Inc., respectively.

Pfost also listed the real estate as his exempt homestead. He valued the property at $60,000 and listed mortgages against the property in the total amount of $54,707, producing an exempt homestead equity of $5293. This equity was within the allowable homestead exemption in effect at the time of Pfost's bankruptcy.[1] Pfost's homestead exemption claim was not challenged in the bankruptcy proceedings. In November 1989, Pfost's debts were discharged in bankruptcy and he emerged from bankruptcy still owning his homestead property and with his homestead equity intact.

On June 1, 1990, Val Al Greenhouses assigned its judgment to EPF. Four days later, Pfost sold his homestead real estate to Ray Leffler for an amount slightly in excess of $60,000. Commonwealth issued a title insurance policy to Leffler. Three days later, Ener-Con assigned its judgment to EPF.

Two weeks later, in July 1990, Pfost filed a circuit court action pursuant to § 806.19(4), STATS. We recite the relevant portions of this statute in the accompanying footnote.[2] In summary, the statute

---

[1] The parties' briefs do not advise us as to the amount of the homestead exemption recognized by bankruptcy law at the time of Pfost's bankruptcy. However, the parties do not dispute that the amount of the exemption exceeded Pfost's equity in his homestead property. Our research indicates that the amount of the allowable exemption was $7500. *See* 11 U.S.C.A. § 522(d) (West 1993). This exemption was later increased to $15,000. *See* 11 U.S.C.A. § 522(d) (West Supp. 1997).

[2] Section 806.19(4)(a), STATS., provides:

> Any person who has secured a discharge of a judgment debt in bankruptcy and any person interested in real property to which the

permits a person who has received a bankruptcy discharge to seek a circuit court order satisfying a judgment based on a debt which has been discharged in the bankruptcy. Pfost's application, however, sought satisfaction of only the Val Al Greenhouses and Ener-Con judgments.[3] It did not address the judgments in favor of the Tiedes or Associated Milk Producers. Pfost's action was assigned to the Honorable Stephen Simanek. On July 27, 1990, Judge Simanek granted Pfost's application. The order directed the clerk to indicate on the records of each case that the two judgments were satisfied.

On April 15, 1992, Leffler sold Pfost's homestead property to George and Karen Simonelic, the current owners. Again Commonwealth insured the title, issuing its title insurance policy to the Simonelics.

Thereafter, Associated Milk Producers and the Tiedes assigned their respective judgments to EPF.[4]

That brings us to the present case. In February 1994, EPF commenced this action by petitioning the circuit court for leave to execute the judgment liens it

---

judgment attaches may submit an application for an order of satisfaction of the judgment and an attached order of satisfaction to the clerk of the court in which the judgment was entered.

[3] Actually, the appellate record shows that Pfost sought satisfaction of only the judgment in favor of Val Al Greenhouses. However, the parties' briefs represent that Pfost also sought satisfaction of the judgment in favor of Ener-Con. Since the resulting order from Judge Stephen Simanek directed satisfaction of both judgments, we will accept the parties' briefs on this matter.

[4] Once again we note a discrepancy between the appellate record and the parties' briefs. The appellate record does not reveal the Tiedes assignment. But again, since the parties do not dispute that EPF also is the assignee of the Tiedes judgment, we accept that representation.

held against the real estate.[5] The court granted EPF's petition and authorized the sheriff to sell the property.[6] EPF provided proper notice of the sale by publication. EPF then purchased the property at the sheriff's sale and received a sheriff's deed on August 5, 1994.

Commonwealth then redeemed the property pursuant to its title insurance policy issued to the Simonelics. Thus, the Simonelics' ownership of the real estate has been preserved.

On July 21, 1995, nearly a year after the sheriff's sale, Commonwealth moved to intervene in this action, seeking relief from Judge Simanek's 1990 order pursuant to § 806.07, STATS.[7] Judge Emily S. Mueller presided over this phase of the proceedings. Specifically, Commonwealth sought to reopen and broaden Judge Simanek's 1990 order to include satisfactions of the judgments in favor of the Tiedes and Associated Milk Producers.

Judge Mueller granted Commonwealth's request to intervene. However, at the conclusion of the hearing on Commonwealth's motion, Judge Mueller denied Commonwealth's request to reopen and amend Judge Simanek's 1990 order. We will address the details of this ruling in our later discussion.

On December 8, 1995, Commonwealth brought a motion for reconsideration. However, this motion actually introduced a new theory for undoing the sheriff's sale. Commonwealth argued that since Pfost

---

[5] EPF was required to obtain circuit court permission to execute on the judgment liens. *See* § 815.04, STATS.

[6] This order was issued by Judge Dennis Barry.

[7] Commonwealth's motion did not specify the statutory basis for its motion. However, at the hearing on its motion, Commonwealth relied on § 806.07, STATS.

had emerged from the bankruptcy with his homestead intact, his subsequent sale of the property to Leffler (as well as Leffler's subsequent sale to the Simonelics) was free and clear of the judgment liens against the property. Judge Mueller also rejected this additional argument.

### SECTION 806.19(4), STATS., AND THE PRO-CEEDINGS BEFORE JUDGE SIMANEK

As noted, Judge Simanek's 1990 order directed the clerk to satisfy the judgments in favor of Val Al Greenhouses and Ener-Con. The order did not speak to the other two judgments held by the Tiedes and Associated Milk Producers. Relying on § 806.07, STATS., Commonwealth sought to reopen the 1990 proceedings and to broaden Judge Simanek's order to include satisfactions of the judgments in favor of the Tiedes and Associated Milk Producers.

■
A circuit court's order denying a motion for relief under § 806.07, STATS., will not be reversed on appeal unless the court has misused its discretion. *See State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 541, 363 N.W.2d 419, 422 (1985). Discretion contemplates a reasoning process dependent on the facts of record and yielding a conclusion based on logic and founded on proper legal standards. *See id.* at 542, 363 N.W.2d at 422. On this issue, the facts are not disputed. They consist of the record before Judge Simanek, minimal as it is, and the proceeding in this case before Judge Mueller.

Commonwealth does not dispute that Pfost applied to Judge Simanek pursuant to § 806.19(4),

85

STATS., for satisfactions of only two judgments.[8] Commonwealth argues, however, that Judge Mueller should nonetheless have amended and broadened Judge Simanek's 1990 order because something "short circuited" in the proceedings before Judge Simanek. We understand Commonwealth to argue that, despite the limited request by Pfost, Judge Simanek was obligated to issue an order which applied to all the debts discharged in Pfost's bankruptcy.

██

We disagree for a variety of reasons. First, we cannot say from the record of the 1990 proceeding that Judge Simanek was alerted that Pfost's request did not include all the judgment debts which had been discharged in bankruptcy. Second, and more importantly, we can hardly fault Judge Simanek for granting the very relief which Pfost requested. Pfost invited Judge Simanek's ruling. We do not review invited error. *See In re Shawn B.N.*, 173 Wis. 2d 343, 372, 497 N.W.2d 141, 152 (Ct. App. 1992). If Pfost was aggrieved by this order, his remedy was to seek reconsideration or to appeal. He did neither.

Commonwealth also argues that Judge Simanek's order was improper because Pfost's application and the ensuing order are not in keeping with the forms set out in § 806.19(4)(b), STATS.[9] We reject this argument for

---

[8] The case file of the proceeding before Judge Simanek was before Judge Mueller at the hearing on Commonwealth's motion. The appellate record does not include this file. However, it does include Pfost's application and Judge Simanek's ensuing order. It may be that this was the extent of the case file in the proceeding before Judge Simanek. We say this because Judge Mueller observed at one point that the case file of the proceeding before Judge Simanek was minimal.

[9] Section 806.19(4)(b), Stats., reads as follows:

two reasons. First, this subsection states that the application and order "shall be in *substantially* the following form." *Id.* (emphasis added). This language does not require that an order entered pursuant to this statute must mirror the statute.

(b) The application and attached order shall be in substantially the following form:

APPLICATION FOR ORDER OF SATISFACTION OF JUDGMENTS DUE TO DISCHARGE IN BANKRUPTCY

TO:   Clerk of Circuit Court

―――― County

1. ―――― (Name of judgment debtor) has received an order of discharge of debts under the bankruptcy laws of the United States, a copy of which is attached, and ―――― (Name of judgment debtor or person interested in real property) applies for satisfaction of the following judgments:

―――― (List of judgments by case name, case number, date and, if applicable, judgment and lien docket volume and page number.)

2. a. Copies of the schedules of debts as filed with the bankruptcy court showing each judgment creditor for each of the judgments described above are attached; or

b. Each judgment creditor for each of the judgments described above has been duly notified of the bankruptcy case in the following manner:   ―――― (statement of form of notice).

3. The undersigned believes that each judgment listed above has been discharged in bankruptcy, and no inconsistent ruling has been made by, or is being requested by any party from, the bankruptcy court.

Dated this ―――― day of ――――, 19―

―――― (Signature)
Judgment Debtor,
Person Interested
in Real Property
or Attorney for
Debtor or Person

Second, and more importantly, we see nothing in the language of § 806.19(4), STATS., which requires that an order of satisfaction must travel to all of the judgments premised on debts which have been discharged in bankruptcy. The very fact that the statute says the judgment debtor "may" apply for a satisfaction under the statute, *see id.* at para. (4)(a), suggests that the debtor may also choose to limit the application to only certain judgments. For whatever reason, Pfost chose to so limit his application. We will not speculate as to why he chose to do so; we simply observe that he did.[10]

We hold that Judge Mueller's application of § 806.19(4), STATS., to the facts of record was correct. Accordingly, Judge Mueller did not misuse her discretion in denying Commonwealth's motion to reopen the proceedings before Judge Simanek.

In addition, Judge Mueller ruled that Commonwealth's application for relief did not comply

---

ORDER OF SATISFACTION

The clerk of circuit court is directed to indicate on the judgment and lien docket that each judgment described in the attached application has been satisfied.

Dated this ——— day of ———, 19—

——— (Signature)
Circuit Judge

[10] In conjunction with this argument, Commonwealth cites to *In re Spore*, 105 B.R. 476 (Bankr. W.D. Wis. 1989). However, we agree with Judge Mueller's observation that *Spore* actually supports EPF, not Commonwealth. *Spore* explains that § 809.19 (4), STATS., establishes a procedure by which a debtor discharged in bankruptcy can obtain a satisfaction of the judgment from the court which entered it. *See Spore*, 105 B.R. at 480.

with the "reasonable time" requirement of § 806.07(2), STATS.[11] This analysis requires that we balance two competing factors: the need for finality of judgments and the ability of a court to do substantial justice when the circumstances so warrant. *See State ex rel. Cynthia M.S. v. Michael F.C.*, 181 Wis. 2d 618, 626-27, 511 N.W.2d 868, 872 (1994).

Commonwealth entered this history in June 1990 when it issued its title insurance policy to Leffler who purchased the real estate from Pfost. We are entitled to presume that Commonwealth, as a sophisticated and knowledgeable title insurer, conducted a title search and discovered the unsatisfied judgments docketed against Pfost. In the face of this knowledge and the potential legal peril it presented, Commonwealth nonetheless insured Leffler's title.

The same is true when Commonwealth insured the Simonelics' title in 1992. With only two of the four judgments of record having been satisfied, Commonwealth elected to yet again insure good title to the property.

Commonwealth explained to Judge Mueller that it did not act sooner to obtain relief from Judge Simanek's order because it was uncertain about the legality of the judgment liens. But that uncertainty would argue for an earlier, not later, action by Commonwealth to resolve the question. Instead, Commonwealth waited more than five years after

---

[11] Commonwealth did not identify which subsection of § 806.07, STATS., applied to its motion. We will assume that the applicable subsection was (1)(e) which allows relief from a judgment which has been "satisfied, released or discharged." Such relief is not subject to the one-year limitation set out in the statute. Rather, it must be sought within a "reasonable time." *See* § 806.07(2).

89

Judge Simanek's order and nearly one year after the sheriff's sale before seeking judicial relief.

We also properly consider the circumstances of EPF. Ever since June 1990 when it acquired its first assignment, EPF conducted its legal and business affairs in the belief that this initial assignment, and those thereafter, were valid and enforceable. EPF then pursued its rights under those assignments by executing on the judgment liens and ultimately purchasing the property at a sheriff's sale. All of these actions were taken without objection by any party and with full judicial approval. Only after all of the foregoing, and nearly a year after the sheriff's sale, did Commonwealth formally enter into this dispute.

We conclude that Commonwealth slept on its rights. The equities weigh far more heavily in favor of EPF. We affirm Judge Mueller's further ruling that Commonwealth's application for relief under § 806.07, STATS., was untimely.

### HOMESTEAD EXEMPTION

By reconsideration motion, Commonwealth argued a new theory for upsetting the sheriff's sale. Commonwealth contended that since the real estate was Pfost's former homestead which had been protected by the bankruptcy, Pfost's subsequent sale of the property to Leffler (and Leffler's subsequent sale to the Simonelics) was free and clear of the judgment liens.

Judge Mueller saw this issue as related to the previous issue regarding Judge Simanek's order and Commonwealth's motion for relief pursuant to § 806.07, STATS. Harkening back to her previous ruling, Judge Mueller denied Commonwealth's motion for

reconsideration. In its respondent's brief on appeal, EPF sounds the same theme.

Although we ultimately reject Commonwealth's homestead argument, we disagree with Judge Mueller and EPF that this issue is dependent upon the 1990 proceedings before Judge Simanek and § 806.19(4), STATS. Thus, at oral argument, we asked EPF to respond to Commonwealth's argument on the merits. EPF did so.

Commonwealth's issue requires that we analyze the homestead exemption. In so doing, we recognize that the issue stems from the homestead exemption accorded Pfost under the federal bankruptcy law. However, the parties have provided us only Wisconsin law on this point and we therefore answer the question on that basis.

The Wisconsin homestead exemption is grounded in our state constitution. Article I, § 17 of the Wisconsin Constitution provides:

> The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted.

A "homestead" is defined as "the dwelling and so much of the land surrounding it as is reasonably necessary for use of the dwelling as a home, but not less than one-fourth acre (if available) and not exceeding 40 acres." *See* § 990.01(13)(a), STATS.; *see also* § 900.01(14), STATS. The "homestead exemption" is defined in terms of its physical characteristics and acreage in § 990.01(14) and in terms of its financial extent in § 815.20, STATS. The latter statute renders a homestead "exempt from execution, from the lien of

91

every judgment and from liability for the debts of the owner to the amount of $40,000, except mortgages, laborers', mechanics' and purchase money liens and taxes . . . ." *See* § 815.20(1). If the homestead is sold, the proceeds are exempt to "an amount not exceeding $40,000 . . . ." *See id.*

In *Moore v. Krueger*, 179 Wis. 2d 449, 507 N.W.2d 155 (Ct. App. 1993), this court restated the well-established purpose of the homestead exemption.

> The purpose of the homestead exemption is to preserve judgment debtors and their families their homes and yet leave them at liberty to change homestead by sale, or to remove for temporary convenience, without forfeiting the exemption.

*Id.* at 458, 507 N.W.2d at 158-59.

This court has also recognized that "the public policy of this state strongly favors the liberal construction of the homestead statutes in favor of the debtor, and that homestead rights are preferred over the rights of creditors." *See Mogilka v. Jeka*, 131 Wis. 2d 459, 468, 389 N.W.2d 359, 362 (Ct. App. 1986).

In this case, Pfost's homestead rights were fully protected in the bankruptcy proceeding. He emerged from bankruptcy with full ownership of his homestead property and with his financial equity in the homestead intact. Pfost then reaped the full financial benefit of that protection when he sold the property to Leffler and received the proceeds.

Judge Mueller's decision to uphold EPF's judgment lien rights against Pfost's *former* homestead property does no violence to Pfost's homestead rights. Pfost left this scenario long ago with the full benefit of his homestead protection. Thus, the true question in this case is whether Commonwealth (standing in the

shoes of the Simonelics as a subsequent purchaser) may "piggyback" on Pfost's homestead protection and invoke it as a shield against EPF's creditor claim.

As the case law demonstrates, the purpose of the homestead exemption is to protect the residence of the debtor and the debtor's family or, in a sale situation, a limited portion of the sale proceeds. *See Moore,* 179 Wis. 2d at 458, 507 N.W.2d at 158-59. The purpose of the homestead exemption should not extend to those outside this "zone of protection." We therefore agree with Judge Mueller's ultimate decision rejecting Commonwealth's argument.

Our conclusion does no violence to the principle stated in *Mogilka* that we are to construe homestead statutes in favor of the debtor, and that homestead rights are to be preferred over the rights of creditors. *See Mogilka,* 131 Wis. 2d at 468, 389 N.W.2d at 362. The contest here is not between the debtor (Pfost) and his creditors. Rather, the contest is between a subsequent purchaser (Commonwealth standing in the Simonelics' shoes) and Pfost's creditors. That juxtaposition does not implicate the homestead exemption or the public policy underpinning the exemption. Commonwealth's argument would extend the purpose of the homestead protection beyond its constitutional, statutory and public policy purposes.

The language of *Hoesly v. Hogan,* 229 Wis. 600, 282 N.W. 5 (1939), supports our conclusion. In rejecting a claim that the homestead exemption should prevail over a judgment lien, our supreme court (quoting from an earlier case) stated:

> While the homestead exemption provisions of the constitution should be liberally applied to carry out their manifest purpose, they were not intended to

93

be so applied as to permit an injustice to be done. The purpose of the organic provisions is to secure homestead exemptions where they properly attach under the law and not to deprive lienholders of their vested rights in property to which the homestead exemption may afterwards be extended.

*Id.* at 604, 282 N.W. at 7 (quoted source omitted).[12]

Commonwealth also argues that *Larson v. State Bank of Ogema*, 201 Wis. 313, 230 N.W. 132 (1930), and *Eloff v. Riesch*, 14 Wis. 2d 519, 111 N.W.2d 578 (1961), should be read in its favor.

In *Larson*, the creditor bank purchased a portion of the debtor's property at execution sale. Thereafter, the debtor conveyed a portion of the same lands to his wife. The wife brought an action seeking to set aside the sheriff's sale to the bank. She argued that the homestead exemption applied to the acreage in question. The supreme court agreed, holding that it did not matter that the exemption was not asserted until after the sheriff's sale. *See Larson*, 201 Wis. at 318, 230 N.W. at 134-35. Commonwealth reads *Larson* to say that in all circumstances a third party may invoke the debtor's homestead exemption after the debtor has conveyed his or her interest in the homestead property.

---

[12] We acknowledge that this case is factually different from *Hoesly v. Hogan*, 229 Wis. 600, 282 N.W. 5 (1939). There, the judgment creditor acquired a lien against the property before the debtor used the property as her homestead. *See id.* at 601, 282 N.W. at 5-6. Here, it appears that the judgment creditors did not acquire their judgment liens until after Pfost acquired his homestead property. Nonetheless, because Commonwealth is a stranger to Pfost's homestead rights and is attempting to "piggyback" on those rights, we conclude that the principle stated by the supreme court applies to this case.

We disagree. The *Larson* court addressed two issues: (1) whether the amount of land claimed as the homestead exemption qualified under the statute, and (2) whether exemption had been timely claimed. *See id.* at 317-18, 230 N.W. at 134-35. The supreme court, however, did not expressly address whether the wife had standing to invoke the homestead exemption of her husband after he had conveyed his interest in the homestead property to her. That, however, is the issue here: may Commonwealth resurrect Pfost's homestead protection after he has conveyed the property?

Even if we address Commonwealth's implicit reading of *Larson*, we reject the interpretation which Commonwealth asserts. The dispute in *Larson* was between the debtor and his wife on the one hand and the creditor who had purchased the property at the sheriff's sale on the other. The supreme court decision had the effect of invoking the husband's homestead exemption for the benefit and protection of the wife—a person clearly within the "zone of protection" as we have previously described. Thus, to the minimal extent *Larson* speaks to this case, it supports EPF, not Commonwealth.

The same is true as to the *Eloff* case cited by Commonwealth. Although the facts of the case are complex, those relevant to this case are these: after the husband/debtor had quitclaimed his interest in the homestead to his wife and abandoned the property, the wife sought to invoke her husband's homestead protection against a claim asserted by her husband's creditor. *See Eloff*, 14 Wis. 2d at 521, 111 N.W.2d at 580.

The supreme court identified the issue as whether the husband/debtor's interest in the property was exempt under the homestead exemption from the lien

of the debtor's judgment at the time of the conveyance to the debtor's wife. *See id.* at 523, 111 N.W.2d at 581. The court held that the husband's interest was exempt. *See id.* at 525-26, 111 N.W.2d at 582. The language and reasoning of the court tracks the "zone of protection" analysis we have described above. We quote the *Eloff* court:

> Concededly [the husband/debtor] did not personally occupy the premises after March, 1956. It does not appear that his leaving was excused by any conduct of his wife; that there were any divorce proceedings, nor that his obligations to provide for his wife and children were altered in any way. Nor does it appear that he made another home available to them which they declined to occupy. To the extent of his interest in the property, he continued to help provide them with a home. *Under these circumstances, continued recognition of the exemption would tend to fulfil the purpose of the exemption statute.*

*Id.* at 524, 111 N.W.2d at 581 (emphasis added).

It is clear from this language that the supreme court saw the debtor's wife and family as within the "zone of protection" contemplated by the homestead exemption.

This case is similar to *Larson* and *Eloff* only to the extent that Pfost, like the debtors in those cases, had previously conveyed his interest in his homestead property. Commonwealth would stop the analysis at this point, and therein lies the flaw in its argument. Commonwealth fails to ask the further important question: is the entity which seeks the homestead protection within the "zone of protection" accorded by the homestead law? In *Larson* and *Eloff*, the beneficiaries of the protection fell within that zone. In this case, Commonwealth does not.

## CONCLUSION

We uphold Judge Mueller's ruling denying Commonwealth relief from Judge Simanek's order pursuant to § 806.07, STATS. We also uphold Judge Mueller's further ruling denying Commonwealth's motion for reconsideration.

*By the Court.*—Order affirmed.