Donald RUMAGE, Plaintiff-Appellant,†

v.

Robert GULLBERG, Janet Gullberg, Advantage Bank
F.S.B., and The Bank of Elmwood, Defendants-
Respondents.

Supreme Court

*No. 98–1276. Oral argument December 1, 1999.—Decided
June 16, 2000.*

2000 WI 53

(Also reported in 611 N.W.2d 458.)

†Motion for reconsideration denied October 19, 2000. See
per curiam decision published in 238 Wis. 2d 844.

For the plaintiff-appellant there were briefs and oral argument by *James O. Vollmar*, Waukesha.

For the defendants-respondents Advantage Bank, FSB, and Bank of Elmwood, there was a brief by *Thomas P. Aiello* and *Madrigrano, Zievers, Aiello, Marry & Dowse, S.C.*, Kenosha, and oral argument by *Thomas P. Aiello.*

For the defendants-respondents Robert Gullberg and Janet Gullberg, there was a brief and oral argument by *Michael F. Dubis*, Waterford.

Amicus Curiae brief by *John W. Daniels, Jr., Owen Thomas Armstrong* and *Quarles & Brady, LLP*, Milwaukee, and oral argument by *Owen Thomas Armstrong*, for The Wisconsin Land Title Association.

¶ 1. WILLIAM A. BABLITCH, J. This case comes before the court on certification from the court of appeals pursuant to Wis. Stat. (Rule) § 809.61 (1997–98). Judgment-creditor Donald Rumage (Rumage) appeals from a decision of the circuit court for Racine County that found 1) the judgment-debtor's equity in his homestead did not exceed the amount

sheltered by the homestead exemption statute and therefore Rumage's docketed judgment was not a lien on the homestead; and, 2) the judgment-debtor sold the homestead for fair market value. The circuit court concluded that Rumage's lien did not survive the sale of the homestead property.

¶ 2. Under Wisconsin law, a debtor can shelter up to $40,000 of homestead equity from the lien of a judgment creditor. When the debtor's homestead equity is at or below the statutory maximum, it is "fully exempt." The question certified by the court of appeals is whether a duly-docketed judgment lien attaches to the debtor's homestead property. We restate this issue further as whether a properly docketed judgment constitutes a valid lien against fully exempt homestead property at the time of sale. We hold that it does not. We further conclude that the circuit court properly exercised its discretion in determining the fair market value of the debtor's homestead.

## Facts and Procedural History

¶ 3. The relevant facts are not in dispute. In February 1978 Reinier Kemeling (Kemeling) purchased residential property on Brook Road in Racine County, Wisconsin, for $178,500. This property was Kemeling's homestead. Kemeling owned and occupied this home when Donald Rumage (Rumage) obtained a judgment against Kemeling for $122,359.90. Rumage docketed the judgment in Racine County on May 1, 1986. At the time Rumage docketed his judgment Kemeling's home was already encumbered by a first and second mortgage.

¶ 4. In January 1989 the first mortgage holder commenced a foreclosure action against Kemeling. On that same day, Kemeling filed a Chapter 7 bankruptcy

proceeding. On his bankruptcy schedules, Kemeling listed the Brook Road property as his homestead and claimed the property as exempt under Wis. Stat. §§ 815.20(1) and 990.01(14) (1989–90), the homestead exemption statutes set forth below.[1] Kemeling reported in his bankruptcy statements that his equity in this property did not exceed the $40,000 limit

---

[1] Wis. Stat. § 815.20 Homestead exemption definition. (1) An exempt homestead as defined in s. 990.01(14) selected by a resident owner and occupied by him or her shall be exempt from execution, from the lien of every judgment and from liability for the debts of the owner to the amount of $40,000, except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided. The exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale of the homestead, but shall extend to the proceeds derived from the sale to an amount not exceeding $40,000, while held, with the intention to procure another homestead with the proceeds, for 2 years. The exemption extends to land owned by husband and wife jointly or in common or as marital property, and when they reside in the same household may be claimed by either or may be divided in any proportion between them, but the exemption may not exceed $40,000 for the household. If the husband and wife fail to agree on the division of exemption, the exemption shall be divided between them by the court in which the first judgment was taken. The exemption extends to the interest therein of tenants in common, having a homestead thereon with the consent of the cotenants, and to any estate less than a fee.

Wis. Stat. § 990.01(14) Homestead Exemption. "Exempt homestead" means the dwelling, including a building, condominium, mobile home, house trailer or cooperative, and so much of the land surrounding it as is reasonably necessary for its use as a home, but not less than 0.25 acre, if available, and not exceeding 40 acres, within the limitation as to value under s. 815.20, except as to liens attaching or rights of devisees or heirs of persons dying before the effective date of any increase of that limitation as to value.

The acreage provision in Wis. Stat. § 990.01(14) is not at issue in this case.

allowed by the Wisconsin statutes. In addition, Kemeling listed Rumage as a creditor.

¶ 5. In February 1989 the Bankruptcy Court lifted the automatic stay against foreclosure action. In March a judgment was entered in the foreclosure action ordering a sheriff's sale of the Brook Road property.

¶ 6. During the mortgage foreclosure redemption period, Kemeling voluntarily sold the Brook Road property to Gary L. Burmeister (Burmeister). Burmeister purchased the property for $165,000, with the intent to resell it. Burmeister's lender obtained an appraisal of the property estimating its market value to be $220,000 and, if certain improvements were made, up to $250,000. The title insurance commitment issued to Burmeister and his mortgagor cited as an exception the docketed judgment in favor of Rumage.

¶ 7. The Kemeling to Burmeister transaction closed on May 31, 1989. Kemeling applied the sale proceeds to the two mortgages, a title company obligation, and to payment of delinquent real estate taxes. After these disbursements approximately $19,500 remained. Kemeling retained this balance as his homestead exemption.

¶ 8. Twelve days after Burmeister purchased the Brook Road property, he entered into a contract to sell the property for $192,500 to Robert and Janet Gullberg (the Gullbergs). This price was reached when Burmeister showed the Gullbergs the appraisal for $220,000. The sale price split the difference between the $165,000 Burmeister paid for the property and the appraised amount. This second sale closed on July 7, 1989. On this same date, defendant-respondent mortgagees acquired their interest in the Brook Road property by conveyance from the Gullbergs. We will

refer to all the defendants collectively as "the Gullbergs."

¶ 9. Rumage was unaware of both private sales of the Brook Road property at the time they occurred and received none of the sale proceeds from either transaction.

¶ 10. Rumage commenced an execution action upon the Brook Road property six years after the Gullbergs acquired the home. Rumage alleged that his lien remained a lien upon the Brook Road property from the date of entry forward. He further alleged that his lien had a priority over the interests of the current owners, the Gullbergs. The Gullbergs counterclaimed, demanding that Rumage release his judgment lien and requesting declaratory relief if the release was not forthcoming. Subsequently, the Gullbergs moved for summary judgment, which was granted.

¶ 11. In granting summary judgment, Racine County Circuit Court Judge Dennis J. Flynn concluded that judgment-debtor Kemeling's equity in the Brook Road property never exceeded the $40,000 homestead exemption and, therefore, Rumage's judgment did not become a lien on the Brook Road property. As a result, Judge Flynn concluded that good title and fee simple was conveyed by Kemeling to Burmeister, and by Burmeister to the Gullbergs.

¶ 12. Rumage appealed. In an unpublished opinion, the court of appeals reversed the summary judgment order. The court of appeals held that a material issue of fact existed as to whether the real estate transaction between Kemeling to Burmeister produced "fair value." *Rumage v. Gullberg*, No. 96–2638, unpublished slip op. at 6–7 (Wis. Ct. App. Aug. 13, 1997). This issue of fair value was critical, according to the court of appeals, because "[h]ad Kemeling received $192,000

for his homestead property—as did Burmeister one month later—Kemeling's equity interest in his homestead property would have exceeded the statutory limit and Rumage's lien would have been enforceable against such interest." *Id.* at 7.

¶ 13. In a footnote the court of appeals directed the parties to its decision *EPF Corp. v. Pfost*, 210 Wis. 2d 79, 563 N.W.2d 905 (Ct. App. 1997). *Rumage*, No. 96–2638, unpublished slip op. at 2 n.1 (Wis. Ct. App. Aug. 13, 1997). In *EPF*, released after the initial circuit court proceedings in this case, the court of appeals held that a subsequent owner of homestead property may not raise a homestead exemption defense to a foreclosure action brought upon a judgment docketed against the prior homestead owner. *EPF*, 210 Wis. 2d at 92–93. Rumage had raised *EPF* as a defense to the Gullbergs' counterclaim, but did not pursue this defense at the summary judgment proceedings. The court of appeals stated that on remand the parties could debate the effect of *EPF* should Rumage choose to pursue the issue.

¶ 14. On remand, Racine County Circuit Court Judge Stephen Simanek found that the sale price of $165,000 in the Kemeling to Burmeister transaction was fair market value. As a result, the court concluded that Rumage's lien did not survive the sale.

¶ 15. Rumage again appealed. The court of appeals certified the appeal to this court.

## Standard of Review

¶ 16. Our analysis requires interpretation of the homestead exemption statutes. Statutory interpretation presents a question of law that we review de novo.

*McDonough v. Dept. of Workforce Development*, 227
Wis. 2d 271, 277, 595 N.W.2d 686 (1999).

¶ 17. Our interpretation of the homestead stat-
utes is guided by a well-established rule of construction
stating that exemption laws are to be liberally con-
strued. *North Side Bank v. Gentile*, 129 Wis. 2d 208,
222, 385 N.W.2d 133 (1986); *Home Owners' Loan Corp.
v. Papara*, 241 Wis. 112, 117, 3 N.W.2d 730 (1942);
*Krueger v. Pierce*, 37 Wis. 269, 271 (1875). " 'The whole
policy and spirit of the law so far as homesteads are
concerned are to secure them to the debtor and his
family.' " *Zimmer v. Pauley*, 51 Wis. 282, 286, 8 N.W.
219 (1881) (quoting *Krueger*, 37 Wis. at 271.).

## Analysis

¶ 18. Rumage contends that a docketed judg-
ment is a lien on homestead property owned by a
judgment debtor; it is only the value of the homestead
up to the statutory maximum of $40,000 that is exempt
from the creditor's claim. Rumage argues that a judg-
ment lien can be removed from the homestead's chain
of title only through some judicial process such as a
levy of execution,[2] or declaratory judgment.[3] A private
sale, according to Rumage, cannot extinguish a judg-
ment lien. If these statutory procedures are not used,
he argues, the docketed judgment remains a lien on the
property.

¶ 19. The Gullbergs contend that if the debtor's
equity in the homestead property at the time of sale is
at or below the $40,000 exempted by statute, then the

---

[2] Wis. Stat. § 815.18(9) (1993–94); Wis. Stat. § 815.21
(1993–94). All subsequent statutory references are to the
1993–94 volume, unless noted otherwise.

[3] Wis. Stat. § 815.20(2); Wis. Stat. § 806.04.

homestead is fully exempt and the lien does not attach. Wisconsin Stat. § 815.20(1)(a) states in part that an exempt homestead "shall be exempt. . .from the lien of every judgment. . . ." As a result, the Gullbergs argue that a fully exempt homestead can be transferred in a private sale unencumbered by the judgment lien.

¶ 20. The litigants in this case advance the two primary, and conflicting, arguments regarding whether or not a judgment lien is attached to the homestead of a debtor. As one commentator explains:

> The majority opinion seems to be that a judgment is not a lien against premises impressed with the homestead character and subject to the homestead use and that an attachment or execution attempted to be levied thereon is absolutely void. Other cases hold that the lien attaches, but it is dormant or in abeyance as long as the homestead continues. The reason for the rule that a judgment is not a lien against land claimed as a homestead, is based upon the theory that a judgment is not a lien upon that which cannot be sold on execution.
>
> While both judgment liens and homestead exemptions are creatures of statute, the exemption, being the later expression of legislative intent and power, displaces the judgment lien, as both cannot stand together in their full extent. The reason given for the rule that the judgment attaches but remains dormant while the homestead exists, is based upon the theory that the homestead exemption is not an assignable estate, but it is a mere possessory right, which is personal to the claimant and does not run with the land. It can be readily seen that different consequences flow from these two lines of decisions. In the first class, the judgment debtor may sell the homestead and the purchaser will obtain a good title, free from encumbrance, so far as existing judg-

ments for debt against the claimant of the homestead are concerned, unless homestead rights have been waived. On the other hand, while the property, so long as it is occupied as a homestead, is neither subject to a lien, levy, or sale when it ceases to be protected by the statute, it becomes liable to levy and sale under the first execution issued and levied, irrespective of whether the writ is issued on a senior or junior judgment.

3 David A. Thomas, *Thompson on Real Property*, § 21.03(n), pp. 220–23 (1994) (citing Wisconsin as a state that follows the majority rule)(footnotes omitted).

¶ 21. We begin our analysis by reviewing the history of the homestead exemption law. A properly docketed judgment lien is a lien on all nonexempt real property of the judgment debtor in the county where the judgment is rendered. Wis. Stat. § 806.15(1).[4] Certain homestead property is exempt property, held by a debtor free from a judgment creditor's claim. This exemption is rooted in Wis. Const. art. I, § 17,[5] set forth below, and implemented through Wis. Stat. § 815.20.

---

[4] Wis. Stat. § 806.15(1):

Every judgment properly docketed showing the judgment debtor's place of residence shall, for 10 years from the date of entry, be a lien on the real property, except the homestead mentioned in s. 815.20, in the county where docketed, of every person against whom it is rendered and docketed, which the person has at the time of docketing or which the person acquires thereafter within the 10-year period.

This statute was amended by 1995 Act 224, a Revisor's Correction Bill. This amendment does not affect our analysis.

[5] Wis. Const. art. I, § 17. "Exemption of property of debtors. The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted."

¶ 22. One hundred and fifty years ago, the homestead exemption statute differed from current law in several respects. The 1849 statute defined the exemption solely in terms of acreage, not equity. § 51, ch. 102 (Laws of 1849).[6] As a result, the dollar value of the homestead exemption was not limited as it is today. At that time, the statute sheltered the homestead property only from execution of a judgment lien. *Hoyt v. Howe*, 3 Wis. 660, [*752], 666–67 [*759–60] (1854). If the judgment debtor conveyed his or her homestead or ceased to occupy it, then the judgment lien could be enforced. *Id.*; *Simmons v. Johnson*, 14 Wis. 568 [*523], 572 [*527] (1861); *Ohio Casualty Ins. Co. v. Holz & Holz, Inc.*, 24 Wis. 2d 587, 592, 128 N.W.2d 330 (1964) (citing *Hoyt*, 3 Wis. 660 [*752]). In *Hoyt*, the court stated:

> If it shall be thought necessary to give the debtor the power to sell his homestead and convey a good title to his grantee, free from the effect of judgments which may exist against him, the legislature is competent to give him this power. . . .

*Hoyt*, 3 Wis. at 667, [*760].

¶ 23. The legislature did just that.

¶ 24. In response to *Hoyt*, the 1858 legislature amended the homestead exemption statute. Ch. 137,

---

[6] Section 51, ch. 102, Laws of 1849 states in part:

A homestead, consisting of any quantity of land not exceeding forty acres, used for agricultural purposes, and the dwelling house thereon. . .or instead thereof, at the option of the owner, a quantity of land not exceeding in amount one-fourth of an acre,. . .owned and occupied by any resident of the state, shall not be subject to forced sale on execution, or any other final process from a court, for any debt or liability contracted after the first day of January, in the year one thousand eight hundred and forty-nine.

Laws of 1858.[7] Under the revised statute a judgment "did not become a lien on such portions of the premises as were used as and for a homestead, because the statute expressly declares that the homestead shall be exempt from the lien of every judgment." *Martin v. C. Aultman & Co.*, 80 Wis. 150, 153, 49 N.W. 749 (1891). *See also Carver v. Lassallette*, 57 Wis. 232, 239, 241, 15 N.W. 162 (1883); *Smith v. Zimmerman*, 85 Wis. 542, 544, 55 N.W. 956 (1893). Subsequent judicial opinions affirmed that the 1858 amendment changed the rule established in *Hoyt. Seamans v. Carter*, 15 Wis. 606 [*548], 608–09 [*549] (1862); *In re Phelan*, 16 Wis. 79, [*76], 83, [*80] (1862); *Baltimore Annual Conference v. Schell*, 17 Wis. 317, [*308], 322–23, [*313] (1863); *Smith v. Zimmerman*, 85 Wis. 542, 544, 55 N.W. 956 (1893) (at the time a judgment was docketed the property at issue was homestead property and "while it is an apparent lien it is in reality no lien or charge thereon.")

¶ 25. At the dawn of the twentieth century, a $5,000 value limitation was added to the homestead exemption. Ch. 269 Laws of 1901. Subsequently, the value limitation was gradually increased to its present limit of $40,000. Wis. Stat. § 815.20. Other than increasing the value limit, the legislature did not change the homestead law during the intervening years in any way that affects our analysis in this case.

---

[7] Section 1, ch. 137, Laws of 1858 states in part:

The owner of a homestead under the laws of this state, may remove therefrom, or sell and convey the same, and such removal, or sale and conveyance, shall not render such homestead subject or liable to forced sale on execution or other final process hereafter issued on any judgment or decree of any court. . .against such owners, nor shall any judgment or decree of any such court be a lien on the homestead for any purpose whatever. . . .

Throughout the decades, courts continued to find that a judgment is not a lien on homestead property when the debtor's equity is less than maximum exempted by statute. *Kopf v. Engelke*, 240 Wis. 10, 15, 1 N.W.2d 760 (1942); *Winter v. O'Neill*, 241 Wis. 280, 285, 5 N.W.2d 809 (1942). The development of the law we outline here was summarized in *Ohio Casualty*:

> Prior to 1858 the Wisconsin homestead exemption was only available to prevent an execution sale. Judgments of courts of record were liens upon the homestead. If the judgment debtor conveyed his homestead the purchaser took subject to the lien of the judgment. Under the present statutes. . .no general judgment is a lien upon the exempt homestead.

*Ohio Casualty*, 24 Wis. 2d at 592 (internal citations omitted). The statute in its present form states that an exempt homestead "shall be exempt from execution, from the lien of every judgment and from liability for the debts of the owner to the amount of $40,000." Wis. Stat. § 815.20

¶ 26. In its certification of this case, the court of appeals questioned the description of the law used in *Ohio Casualty*. "Section 806.15(1), Stats., does not state that a judgment lien is not a lien on homestead property. Rather, the statute says that the homestead property is exempt from execution under § 815.20, Stats. Section 815.20(1) in turn caps the homestead exemption in a sale situation at $40,000." *Rumage v. Gullberg*, No. 98–1276, unpublished slip op. at 5–6 (Wis. Ct. App. May 5, 1999). The court of appeals posited that when Wis. Stat. § 806.15(1) and Wis. Stat. § 815.20(1) are read together, a docketed judgment lien attaches to homestead property, although it cannot be enforced to the extent that the homestead exemption applies. "If the language of the supreme court cases is

literally applied, a judgment creditor is deprived of the benefits of a homestead sale which produces proceeds in excess of the exemption." *Id.* at 6. Rumage also asserts that it is not the homestead that is exempt from the lien of every judgment, but the value to the amount of $40,000. 

¶ 27. The initial, and critical, step taken when a judgment lien is asserted against homestead property is to determine if the debtor has equity in the homestead in excess of the amount sheltered by the homestead exemption. "A judgment lien attaches generally only to the judgment debtor's interest in the land." Milton R. Friedman, *Contracts and Conveyances of Real Property*, § 4.8(e) p. 412 (5th ed. 1991) (footnote omitted). The value of the exemption to the debtor is based upon the debtor's equity in the homestead.[8] *Eloff v. Riesch,* 14 Wis. 2d 519, 523–24, 111 N.W.2d 578 (1961) (citing *Northwestern Securities Co. v. Nelson,* 191 Wis. 580, 583, 211 N.W.2d 798 (1927)). If the debtor's equity in the homestead exceeds the amount sheltered by statute, there is surplus equity and the homestead is "partially exempt." Wis. Stat. § 815.18(9).[9] We agree with the court of appeals and Rumage that when a homestead is partially exempt, a

---

[8] Wis. Stat. § 815.18(2)(g): " 'Equity' means the fair market value of the debtor's interest in property, less the valid liens on that property."

[9] Wis. Stat. § 815.18(9): Partially Exempt Property.

In case of property that is partially exempt, the debtor. . .is entitled to claim the exempt portion of the property. The exempt portion claimed shall be set apart for the debtor, or for the debtor's dependents, and the nonexempt portion shall be subject to a creditor's claim. If partially exempt property is indivisible, the property may be sold and the exempt value of the property paid to the debtor or the debtor's dependents.

docketed judgment is a lien upon the debtor's equity in excess of the amount sheltered by Wis. Stat. § 815.20. When the partially exempt property is sold this defect must be corrected in order for the seller to give clear title.

¶ 28. However, if the debtor has less than $40,000 in equity, then the homestead is fully exempt. The debtor possesses no equity interest upon which the judgment can be a lien. As a result, there is no lien, and accordingly a debtor-seller can give clear title to the purchaser of fully exempt homestead property. "A judgment that becomes unenforceable ceases to be an encumbrance." Milton R. Friedman, *Contracts and Conveyances of Real Property*, § 4.8(e) p. 411 (5th ed. 1991)(footnote omitted). A fully exempt homestead is free of the judgment lien when the property is lawfully conveyed. *See Eloff*, 14 Wis. at 524–26; *Kopf*, 240 Wis. at 15.

¶ 29. Our analysis of the operation of the homestead statutes is based upon our examination of the language of the statutes and decades of cases interpreting this exemption. From 1858 through to the present, only *EPF* conflicts with this reasoning. In *EPF*, the court of appeals held that a judgment creditor's lien attached to homestead property despite the fact that the property was fully exempt when sold by the judgment debtor. *EPF*, 210 Wis. 2d at 92–93. We overrule *EPF* to the extent it conflicts with our conclusions in this case. The flaw in *EPF* is it concluded that a docketed judgment is a lien on fully exempt homestead property. It is not.

¶ 30. Having set forth the fundamental legal principles applicable to the resolution of this case, we

turn to address the specific arguments presented by the parties.

¶ 31. Rumage asserts that when the legislature capped the value of the homestead exemption by adding a maximum dollar amount to the statute, the nature of the exemption changed. The judgment, according to Rumage, is now a lien on the home, although the homeowner keeps his sheltered value. However, this argument ignores the initial question: does the debtor possess any nonexempt equity in his homestead? If the answer to this question is no, then the judgment is not a lien on the homestead property. The addition of the dollar amount to the exemption statute merely raised to the forefront the question of whether a debtor's homestead is partially exempt or fully exempt. As we have already stated, in the many intervening years since the dollar limitation on the value of the homestead exemption was added, our cases continued to state that a judgment is not a lien on fully exempt homestead property. *Ohio Casualty*, 24 Wis. 2d at 592.

¶ 32. Rumage also argues that the existence of statutory procedures for determining a debtor's equity in homestead necessarily means that a judgment lien attaches to all homestead property and remains on the property until removed by judicial action. Rumage contends that a private sale cannot extinguish a judgment lien and therefore a purchaser in a private sale takes the property subject to the lien under the rule of *Carefree Homes v. Production Credit Ass'n.*, 81 Wis. 2d 541, 260 N.W.2d 759 (1978); *Eloff*, 14 Wis. 2d 519; *R.F. Gehrke v. Mahl*, 237 Wis. 414, 297 N.W. 373 (1941). We disagree.

¶ 33. We first examine Wis. Stat. § 815.20(2), set forth below.[10] This statute provides that an owner of fully exempt homestead property may utilize the procedures for declaratory judgment in Wis. Stat. § 806.04 if a release is demanded but not received from a judgment creditor. The statute protects the homestead exemption by giving the homeowner a tool to compel a release from a creditor: the debtor can obtain a declaratory judgment.

¶ 34. A suggested procedure for releasing a homestead is set forth in James J. Vance, *Titles to Real Estate*, University of Wisconsin Law School Continuing Education and Outreach (1998 Revised Ed.). Vance suggests that the seller prepare a payout schedule showing sale price, sale expenses, the homestead exemption, judgments and liens and a proposed distribution of cash proceeds to persons with the highest priority. *Id.* at § 13.11–12. "When the homestead is involved, the schedule. . .would propose to pay off judgments if there are funds in excess of closing costs, mortgages, construction liens, and the exemption." *Id.* at § 13.12. The proposed payout schedule is sent to all lien holders. *Id.* at § 13.11. A release is demanded pur-

---

[10] Wis. Stat. § 815.20(2) (as amended by 1993 Wis. Act 486, § 188):

> Any owner of an exempt homestead against whom a judgment has been rendered and docketed, and any heir, devisee or grantee of such owner, or any mortgagee of such homestead, may proceed under s. 806.04 for declaratory relief if such homestead is less than $40,000 in value and the owner of such judgment shall fail, for 10 days after demand, to execute a recordable release of such homestead from the judgment owner's judgment lien.

This section was subsequently amended by 1995 Wis. Act 224, § 119, a Revisor's Correction Bill. The amendment does not affect our analysis.

suant to Wis. Stat. § 815.20(2) and if the creditor does not execute a recordable release the owner can proceed under Wis. Stat. § 806.04 for declaratory relief. "This provision is extremely effective because the judgment holder is charged for all expenses in the court proceeding." *Id.* at § 13.12.

¶ 35. Obtaining a recordable release would be a better practice. However, this does not detract from our conclusion that the seller of fully exempt homestead property gives the buyer clear title.

¶ 36. Additionally, our opinion in this case does not change a judgment creditor's right to pursue a levy of execution. The creditor must establish an enforceable lien, which in turn requires that the homestead be partially exempt.

¶ 37. We do not agree with Rumage's contention that the value of the debtor's equity can only be determined through a judicial proceeding. Wisconsin Stat. § 815.18(7) provides that the value of any property subject to exemption "shall be determined by agreement of the parties or by a commercially reasonable manner." The price paid in a commercially reasonable private sale can serve as evidence of fair market value and the debtor's equity at the time of sale. *Kopf*, 240 Wis. at 15; *Eloff*, 14 Wis. 2d at 523 (where the court considers "whether Edward's interest in the property was exempt from the lien of Gebhard's judgment at the time he conveyed it to Rosemary"). Rumage has presented no persuasive arguments that a private arms-length sale, which results in fair market value being paid for the real estate, is not a "commercially reasonable" method to determine the judgment debtor's equity in the homestead. Although Rumage cites *Carefree* and

*Gehrke*, these cases did not involve homestead property. This is a critical distinction because Wis. Stat. § 806.15(1) provides that a properly docketed judgment is a lien on all real property except homestead property that is exempt from execution. In this case the property at issue was undisputedly homestead property.

¶ 38. At oral argument, Rumage asserted that he had no notice of either the Kemeling to Burmeister transaction or the Burmeister to Gullberg sale and therefore this was not a fair process. However, at no time prior to these sales was Rumage deprived of his right to pursue a forced sale on the Brook Road property. That is the protection afforded by the law to Rumage.

¶ 39. Next, Rumage points to our statement in *Carefree* that allowing a private sale to extinguish the lien will endorse a new type of foreclosure where the debtor will unilaterally determine the time and manner in which real estate is sold, depriving junior lien holders of the benefits of statutory procedures in a judicial proceeding. *Carefree*, 81 Wis. 2d at 551. In *Carefree*, the debtors sold a parcel of land encumbered with a lien. *Id.* at 543. As we previously noted, the debtors in *Carefree* were not selling homestead property and therefore the court did not have to undertake the initial analysis of whether the property was exempt from the judgment creditor's lien. Because a valid lien was in effect the court stated that a private sale could not make the lien simply disappear. Our holding here does not change this rule. A private sale of a homestead does not make an enforceable lien on nonexempt property disappear.

¶ 40. In *Eloff*, cited by Rumage, the court stated the general rule, that "[a] judgment lien properly docketed is superior to a subsequent conveyance of the debtor's interest in real estate." *Eloff*, 14 Wis. 2d at 523. The *Eloff* court said that the necessary next step is to consider whether the judgment debtor's interest in the homestead property was exempt from the lien at the time it was conveyed. *Id.* The court concluded that the debtor's homestead equity was less than the statutory maximum and entirely exempt from the lien of the judgment creditor at the time the debtor conveyed his interest. *Id.* at 527. The court's analysis affirmed that the creditor's judgment was not a lien on the property and cloud was removed from the title. *Id.* at 521, 527. The holding in *Eloff* supports our conclusion in this case.

¶ 41. Whether a debtor's homestead equity is determined via a private sale, levy execution, or declaratory judgment, the issue to be resolved is whether the judgment is a lien on the homestead. The answer to this question depends upon whether the debtor's equity is greater than the amount sheltered by statute. This determination depends upon ascertaining the fair market value of the homestead, minus any amount due to unexempt creditors. If the debtor's equity is greater than the statutory maximum, the judgment is a lien on the surplus. If the debtor's homestead equity is fully exempt there is no lien. As a result, there is no encumbrance on the property at that time.

¶ 42. When a judgment debtor sells his homestead in a private sale, the value of the property at the time of transfer may establish whether the homestead

is fully exempt. *Kopf*, 240 Wis. at 15.[11] Rumage contends that the circuit court judge erred as a matter of law in the criteria he used to determine whether the sale price in the Kemeling to Burmeister transaction was for fair market value. We disagree with this argument.

¶ 43. Whether the sale by Kemeling to Burmeister was for fair market value is a question of fact. A question of fact decided by the circuit court judge is sustained unless it is clearly erroneous. Wis. Stat. § 805.17(2). When more then one inference can be drawn from the evidence, the reviewing court must accept the inference drawn by the finder of fact." *Elkhorn Sch. Dist. v. East Troy Sch. Dist.*, 110 Wis. 2d 1, 6, 327 N.W.2d 206 (Ct. App. 1982); *Onalaska Elec. Heating, Inc. v. Schaller*, 94 Wis. 2d 493, 501, 288 N.W.2d 829 (1980).

¶ 44. Rumage contends that the circuit court erroneously based its decision on fair market value upon standards for establishing "fair value" in a foreclosure sale. In addition, Rumage contends that the judge erroneously applied foreclose sale law by accepting the price paid by a speculator to determine value. *First Wis. Nat'l Bank of Oshkosh, v. KSW Inv.*, 71 Wis. 2d 359, 238 N.W.2d 123 (1976).[12]

---

[11] "Deducting the $5,000 exemption, the amount of the mortgage on the property, the amount of unpaid taxes clearly demonstrates that *at the time of the transfer*, John's equity in the premises was of little or no value, and it was that and that only that was subject to the lien of plaintiff's judgment." *Kopf v. Engelke*, 240 Wis. 10, 15, 1 N.W.2d 760 (1942)(emphasis supplied).

[12] *First Wis. Nat'l Bank of Oshkosh, v. KSW Inv.*, 71 Wis. 2d 359, 368, 238 N.W.2d 123 (1976): "In determining the fair

¶ 45. Judge Simanek conducted a hearing on the issue of the value of the Brook Road property on March 31, 1998. Upon motion for reconsideration he conducted a second hearing on this same issue on April 29, 1998. At the hearing upon motion for reconsideration, there was discussion about the distinction between "fair value" and "fair market value." The record shows Judge Simanek's decision was founded upon the idea that an arms-length transaction may demonstrate fair market value, although he cited several foreclosure cases for purposes of analogy. The judge stated that fair market value is what a willing buyer under no compulsion to purchase will pay to a willing seller who is not compelled to sell. Judge Simanek found no evidence of compulsion, collusion or fraud between Kemeling and Burmeister. He considered a variety of parameters including the property's assessed value, noting that the Town of Caledonia assesses as a percentage of what it estimates to be the property's fair market value. The judge also considered the appraisal estimate obtained by Burmeister's lender valuing the Brook Road property at $220,000. The judge noted that the property sold for almost 83 percent of its assessed value at a time when there was an ongoing bankruptcy and foreclosure proceeding. Such proceedings, noted the judge, may influence what a seller is willing to accept as fair market value. In sum, after hearing all the evidence and arguments, the circuit court judge determined that the $165,000 sale price was for fair

value. . .the trial court should have considered the price which a person willing and able to buy the property would reasonably pay for it, not for purposes of speculation, but for that use to which it has been or reasonably may be put."

market value. We cannot conclude that this decision is erroneous.[13]

¶ 46. Finally, Rumage contends that the Gullbergs are not entitled to nunc pro tunc (now for then) declaratory relief as of May 31, 1989. However, we conclude that the relevant time of inquiry is the time of transfer by the judgment debtor. Wis. Stat. § 815.18(7); *Kopf*, 240 Wis. at 15. Section 815.18(7) expressly permits the valuation of a homestead exemption to be made in any reasonable manner. We have concluded that the private sale was an appropriate means to determine value under this statute and therefore the time of sale is the date to which declaratory relief shall reach nunc pro tunc. Rumage attempts to distinguish *Kopf* by pointing out that this case did not involve a judgment lien. However, *Kopf* demonstrates that a debtor's equity in a homestead is calculated at the time of transfer. *Kopf*, 240 Wis. at 15.

¶ 47. In sum, we conclude that a judgment lien is not a valid lien against fully exempt homestead property. In addition, we conclude that the circuit court did not err in concluding that the sale of the property at issue in this case was for fair market value.

*By the Court.*—The judgment of the circuit court is affirmed.

---

[13] Because we conclude that the judgment lien did not attach to Kemeling's fully exempt homestead property, we need not examine several additional arguments offered by the parties, including Rumage's argument on whether a homestead exemption defense runs with the land, and questions relating to equitable subrogation. In addition, we need not address the Gullbergs' assertion that Rumage's claim is barred by laches.