Zimmer and wife vs. Pauley.

*January 14 — February 8, 1881.*

HOMESTEAD EXEMPTION. *(1) Former statute construed: homestead held in severalty. (2) Rule of liberal construction. (3) Rule applied to a case of absence without gaining new homestead, etc.*

1. Under the statute as it existed before the late revision, an exempt homestead was required to be of land held in severalty by the person claiming the exemption.

2. It is settled in this state that the homestead law will be liberally construed to effect its design.

3. The purposes for which plaintiffs had removed from their former homestead at H., had failed; they had not acquired any new exempt homestead; with a view to returning to their former home, they had surrendered their contract for the purchase of property at A., on which they had temporarily resided, and had arranged with the tenant of their house at H. to procure for himself another house; but had consented, at the request of the owner of the property at A., to remain there until fall. About the middle of August the plaintiff wife removed some furniture to the house at H., and with one child occupied that house several days, and then returned to the family at A. Near the end of the same month a judgment was docketed against the plaintiff husband, which became a lien on any land of his at H. not exempt; and defendant claims plaintiffs' former homestead at H. under an execution sale upon that judgment. *Held*, that the property was exempt from such sale.

APPEAL from .the Circuit Court for *Clark* County.

Action to remove a cloud upon plaintiffs' title to land. The case is thus stated by Mr. Justice CASSODAY:

" The plaintiffs were married in 1872, and lived together as husband and wife in a house on a lot in the village of Humbird, Clark county, Wisconsin, and occupied the same as a homestead from 1872 to April 10, 1877. March 16, 1877, the plaintiff *Philip* and one Nicholas Kramer entered into an agreement in writing with Louisa Randall, agreeing to purchase certain brewery lots, with a dwelling-house and a brewery thereon, at or near Augusta, in Eau Claire county, for which they agreed to pay $2,000 in four equal annual installments, with interest, and with provisions. to turn the same into a tenancy in case of non-performance; which contract was made on the part of *Philip* with the intention of teaching his boys to manufacture beer. About April 10, 1877, the plaintiff *Philip* rented his homestead in Humbird to a tenant, and moved with his family into the dwelling-house on the brewery lots at Augusta, and with Kramer engaged in the business of manufacturing and selling beer thereon. It appears that the plaintiff *Philip* voted at the town and village elections at Augusta in the spring of 1878, and also offered to vote there in the fall of 1877. Prior to June 5, 1878, Kramer left, and thereupon, and on June 5, 1878, *Philip* surrendered to Mrs. Randall the contract, and all interest of the second parties therein, and in consideration therefor she discharged and surrendered a mortgage given to her by *Philip* and wife on the house and lot at Humbird as security for the first payment on the contract, and also released him and Kramer from all further obligations under the contract; and the same was done with the intention on the part of said *Philip* of returning to and occupying his house at Humbird and commencing the shoemaker's trade. About July 2, 1878, *Philip* notified his tenant at Humbird that he must get another house. About the time of the surrender of the contract, and at the request

of Mrs. Randall, *Philip* consented to remain with his family at the brewery until fall, in order that he might take care of his patch of corn and garden.    About the middle of August, 1878, *Mrs. Zimmer* took a bedstead and some clothing for a bed and some chairs, on a wagon, to Humbird, and put them in one of the rooms of their house, which she and a child who went with her occupied for three or four days, and then returned with the child to her family at Augusta.    August 27, 1878, a judgment was recovered against *Philip* and in favor of the present defendant; and August 29, 1878, a transcript thereof was filed and docketed in Clark county.    *Philip* continued to live with his family at Augusta and sell beer until September 29, 1878, when they all moved to Humbird, and at once went into and occupied their former homestead, which they have continued to occupy ever since.    In 1879 an execution was issued on the judgment, and levied upon the house and lot so occupied by them at Humbird, and the same were sold thereon to the defendant, who received the usual certificate of sale; and this action is brought to remove the same as a cloud upon the title.    The only defense is, that the premises were not the homestead of the plaintiffs at the time of filing and docketing the judgment in Clark county."

Judgment was rendered in favor of the defendant, dismissing the complaint and for costs; from which the plaintiffs appealed.

For the appellants there was a brief by *R. J. MacBride,* and oral argument by *L. M. Vilas.*

For the respondent there was a brief by *James O'Neill,* and oral argument by *S. U. Pinney.*

CASSODAY, J.    The law, as it stood prior to the revision and while the plaintiffs lived upon the brewery lots at Augusta, was such that they could not acquire a homestead right therein which would be exempt, for the reason that *Philip* was only a tenant in common with Kramer, and did not hold in severalty.

*West v. Ward*, 26 Wis., 579; *Russell v. Lennon*, 39 Wis., 570. This, therefore, is not a case of a choice between two homesteads. It is admitted that the plaintiffs had no homestead to which the exemption laws could apply at Augusta, and the only question is whether they had such homestead at Humbird. In *Jarvais v. Moe*, 38 Wis., 440, relied upon by counsel, the question was, which of two separate buildings was exempt; and RYAN, C. J., speaking of the amendment of 1858, said "that it was the legislative policy to save their homes to judgment debtors and their families" (page 444); and that "the obvious design of the legislature in the act of 1858 was to so change the rule of *Hoyt v. Howe*, as it was then understood, as to leave judgment debtors as free as other persons to change their homes by sale, and to be absent for temporary convenience, without forfeiture of the exemption." Page 445. In *Watkins v. Blatschinski*, 40 Wis., 347, it was held that "moneys due a judgment debtor from the purchaser of his homestead, as a part of the consideration therefor, and which the debtor designs in good faith to apply to the purchase of another homestead, are not liable to garnishment under our statutes." So in *Johnson v. Harrison*, 41 Wis., 381, under the law as it stood prior to the revision, it was held that "it is the policy of the law of this state to exempt the homestead and its proceeds from liability for the mere personal debts of its owner, not only during his lifetime, but after his decease." This was in a case where the portion of the forty acres, constituting the homestead, upon which the dwelling-house and its appurtenances stood, was sold; and it was held that such sale did not divest the remainder of the premises of its character of a homestead. So in *Krueger v. Pierce*, 37 Wis., 269, lath, shingles and lumber obtained by the debtor for the purpose of repairing the dwelling-house occupied by him as a homestead, and actually deposited upon land included in the homestead, were held exempt. The present chief justice, in

giving the opinion of the court in that case, said: "It is a cardinal rule, which this court has frequently recognized and affirmed, that exemption laws are to be liberally construed. The whole policy and spirit of the law so far as homesteads are concerned are to secure them to the debtor and his family." Page 271. Certainly nothing further need be said as to the purpose of the statute. Assuming that the plaintiffs actually lost their residence in Humbird, and actually gained a residence in Eau Claire county, then a mere resolution or determination to change his residence back to Humbird might be properly held to be "insufficient where there was no actual removal, or where the party continued in the use and occupation of the same house and home, with all the *indicia* and circumstances of continued residence." It was so held in *Carter v. Sommermeyer*, 27 Wis., 665. But here there was something more done. The purposes for which the plaintiffs went to Augusta had failed. The contract of purchase of the brewery property had been surrendered and given up nearly three months before the judgment, with the purpose of returning to Humbird and again occupying his dwelling-house there. In July, arrangements were made with the tenant then occupying the same to obtain another house. Some two weeks prior to the judgment, a load of household furniture was taken by *Mrs. Zimmer* and placed within one of the rooms of the dwelling-house at Humbird, where she and her child remained for two or three days. With some doubt on my part, but yielding to the convictions of my brethren, we hold that these things constituted a resumption of the homestead, even if it had been abandoned. In *Brettun v. Fox*, 100 Mass., 234, it was held that storing furniture in a room of the dwelling-house was a sufficient occupancy within the meaning of their statute to retain the right of exemption. In *Phipps v. Acton*, 12 Bush, 375, it was held that "so long as the widow is in possession of the premises by herself, her agents or tenants, her right to the

homestead will continue." But this court have so often expressed their opinion on the exemption law, that no citations from other states seem to be necessary.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment in favor of the plaintiffs for the relief demanded in the complaint.