Frank D. MOORE d/b/a Shagbark Builders and Mary
Moore, his wife, Plaintiffs-Appellants,

v.

Alvin F. KRUEGER, Defendant-Respondent.†

Court of Appeals

*No. 92–3303. Submitted on briefs August 17, 1993.—Decided
September 28, 1993.*

(Also reported in 507 N.W.2d 155.)

†Petition to review dismissed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *James E. Pressentin* of Green Bay.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Daniel W. Stevens* of *Esser, Dieterich & Stevens* of Menomonee Falls.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Frank and Mary Moore appeal an order dismissing their complaint requesting that proceeds of a home they owned in Rhinelander be determined to be exempt as proceeds from the sale of their homestead. The trial court found that prior to their attempt to claim the exemption, the Moores abandoned their homestead when they left it with no intent to return. The trial court therefore concluded that the Moores lost their homestead exemption.

The Moores argue first that they did not abandon their Rhinelander homestead and contend that there is ample evidence to support this argument. Alternatively, the Moores argue that even if the trial court was correct by finding that the Moores moved from the house with no intent to return and reoccupy it as a homestead, it erred in its interpretation of sec. 815.20(1), Stats.,[1] by concluding that because the

---

[1] Section 815.20(1) provides in part:

An exempt homestead as defined in s. 990.01(14) selected by an owner and occupied by him or her shall be exempt from execution, from the lien of every judgment . . . to the amount of $40,000 . . . . The exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale of the homestead, but shall extend to the proceeds derived from the sale to an amount not exceeding $40,000, while held, with the intention to procure another homestead with the proceeds, for 2 years.

Moores moved before the sale of their home, the ultimate sale and proceeds have no bearing on the Moores' exemption claim. We agree with the latter argument and because the factual issue of the Moores' intent to use the sale proceeds to purchase a new homestead remains unresolved, we reverse and remand it to the trial court for resolution of this question.

In June 1990, the Moores placed their Rhinelander home for sale because of financial difficulties. Frank found employment in Green Bay. By September 1990, Frank and Mary rented an apartment in the City of Green Bay and their children attended school there. In October 1990, the Moores leased the Rhinelander house while still attempting to sell the home and allegedly use the proceeds to purchase a homestead in Green Bay. The written lease included a condition that the tenants would have to vacate the premises within thirty days if the house sold.

In February 1991, Alvin Krueger obtained a money judgment against the Moores and docketed it in Oneida County circuit court in March. In May 1991, the house sold, and in July the Moores filed this declaratory action to declare the proceeds from the sale exempt from the judgment lien because it was a homestead or the sale proceeds were intended to be used to procure another homestead.

The trial court's finding that the Moores "abandoned" their homestead, that is, did not intend to reoccupy the house in Rhinelander, is a finding of fact. A trial court's factual findings must be adopted unless they are clearly erroneous. Section 805.17(2), Stats. On the other hand, the Moores' contention that the trial court erred in its interpretation of sec. 815.20(1), Stats., is a question of law. We review questions of law

independently of the trial court. *Campion v. Montgomery Elevator Co.*, 172 Wis. 2d 405, 410, 493 N.W.2d 244, 246 (Ct. App. 1992). Also, we are required to interpret the homestead exemption statute liberally to protect the homeowner. *Reckner v. Reckner*, 105 Wis. 2d 425, 430-31, 314 N.W.2d 159, 162-63 (Ct. App. 1981).

Under sec. 815.20(1), Stats., a homestead selected by a resident owner and occupied by the owner is exempt from certain creditors. Section 815.20(1) provides that despite the owner/occupier requirement the homestead exemption is not impaired in two instances: (1) "temporary removal with the intention to reoccupy the premises as a homestead," and (2) "the sale of the homestead." In the event of a sale, the exemption "shall extend to the proceeds derived from the sale to an amount not exceeding $40,000, while held, with the intention to procure another homestead . . . for 2 years."

∎

Here, we determine the availability of the homestead exemption as of the time the judgment was docketed. *See Northern State Bank v. Toal*, 69 Wis. 2d 50, 58, 230 N.W.2d 153, 157 (1975) (property owned but not occupied as a homestead when judgment liens are docketed can be attached even if the debtor later does occupy it as a homestead); *Lueptow v. Guptill*, 56 Wis. 2d 396, 403-04, 202 N.W.2d 255, 259 (1972) (date upon which a household must be occupied to qualify as a homestead is the date upon which the judgment is docketed); *Upman v. Second Ward Bank*, 15 Wis. 492, 496 (1862) (when judgment is docketed, it becomes a lien upon the debtor's real estate, if not then occupied as a homestead). The judgment was docketed in March 1991, after the Moores moved out of the house and while the house was still for sale.

## TEMPORARY REMOVAL WITH THE INTENT TO REOCCUPY

The trial court's finding that the Moores' removal from the Rhinelander house was not a temporary removal with the intent to return and reoccupy it as a homestead is not clearly erroneous. When owners remove themselves from a house with the fixed intent to sell the house, logic leads us to conclude that they did not intend to reoccupy the house as a homestead. The Moores moved to Green Bay where Frank obtained employment and their children attended school. This evidence strongly supports the trial court's finding that the removal was not temporary with the intent to reoccupy the Rhinelander home.

Mary stated that they did not intend to reoccupy the house in Rhinelander if it sold, suggesting that they might return if it did not sell. However, a vague intent to return hinged upon the contingency that they do not sell the house is insufficient to establish the requisite intent to reoccupy the premises as a homestead. In order to fall under the temporary removal exception, the removal has to be made "with a certain and abiding intention to return to the premises and reside there . . . . A vague intention to return someday is insufficient." *Schapiro v. Security S&L Ass'n*, 149 Wis. 2d 176, 182, 441 N.W.2d 241, 244 (Ct. App. 1989). Even considering the fact that the Moores voted in Rhinelander and visited there often, we cannot conclude that the trial court's finding that the Moores did not intend to reoccupy the Rhinelander house as a homestead is clearly erroneous. *See* sec. 805.17(2), Stats.

## SALE OF THE HOUSE

The Moores argue that even if they do not fall under the temporary removal exception of the owner/occupier requirement, they do fall under the other exception: sale of the house with the intent to use the proceeds to procure another homestead. Therefore, they argue, the trial court should not have considered its finding that they did not intend to return to their house in Rhinelander as dispositive. We agree.

One could argue that in order to claim the proceeds exempt, the premises must not have lost its character as a homestead. Further, if the owner moves from the premises with the intent to sell it, it cannot be said that there is temporary removal accompanied by the intention to reoccupy. Therefore, Krueger argues that an owner destroys the homestead exemption by moving from the premises prior to a sale so that a later sale is not the sale of a homestead.[2] However, we conclude that this reasoning is contrary to the requirement that sec. 815.20(1), Stats., be construed liberally. *Reckner*, 105 Wis. 2d at 431, 314 N.W.2d at 162-63.

Although the homestead exemption is not lost if a removal from the house is temporary, it does not necessarily follow that if the removal is not temporary the exemption is lost. This is because our legislature has also seen fit to extend the homestead exemption to the

---

[2] This was the reasoning of the majority in *Fleischhauer v. Bilstad*, 379 P.2d 880 (Or. 1963), which is directly on point. Oregon has adopted Wisconsin's homestead exemption and was dealing with a case in which the exemption claimants moved from their homestead with no intent to return, but with the intent to sell the house and use the proceeds to acquire another. However, we are more persuaded by the reasoning of the three judges who dissented in this case.

proceeds from the sale of the homestead if the proceeds are intended to be used to procure another homestead. Obviously, if the owner occupies the homestead up to the time of the sale, the proceeds are from the sale of a homestead and they remain exempt for two years. However, it would be a narrow construction and an unreasonable result if we were to insist that an owner occupy the homestead at the time of the sale in order to maintain the homestead exemption for the sale proceeds.[3]

While sec. 815.20(1), Stats., provides that the homestead exemption is not impaired by temporary removal or by the sale of the homestead, it is ambiguous regarding owners who permanently remove themselves from a home that is for sale, but who intend to use the proceeds from the sale to procure another homestead. When a statute is ambiguous we look to the scope, subject matter and object of the statute to discern the legislative intent, but we must interpret it in such a way as to avoid an absurd or unreasonable result. *DeMars v. LaPour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891, 893 (1985). Furthermore, a statute should not be construed to work an unreasonable or absurd result, even when language seems clear and not ambiguous. *Dombeck v. Chicago, M. & St. P. & Pac. R.R. Co.*, 24 Wis. 2d 420, 438, 129 N.W.2d 185, 194 (1964).

The homestead exemption was enacted pursuant to Article I, Section 17 of the Wisconsin Constitution, which provides: "The privilege of the debtor to enjoy the

---

[3] We agree with the Iowa court, which stated that to insist upon the occupancy of the owner at the time of the sale would "reduce the law to somewhat of an absurdity at this point." *Vittengl v. Vittengl*, 135 N.W. 63, 65 (Iowa 1912).

necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted." The purpose of the homestead exemption is to preserve judgment debtors and their families their homes and yet leave them at liberty to change homesteads by sale, or to remove for temporary convenience, without forfeiting the exemption. *Zimmer v. Pauley*, 51 Wis. 282, 285, 8 N.W. 219, 221 (1881). To construe sec. 815.20(1), Stats., to impair the homestead exemption merely because the owner removed himself or herself from the premises before the sale was consummated would defeat the purpose of this statute and would thereby produce an unreasonable result. The purpose of the rules of statutory construction is to give effect to legislative intent: "what legislative policy relevant to the purposes of the homestead exemption would require the consummation of the sale before the owner leaves the premises?" *Fleischhauer*, 379 P.2d at 889 (O'Connell, J., dissenting).

It should be noted that this decision does not affect the rule that a person can have only one homestead at a time. *Plan Credit Corp. v. Swinging Singles, Inc.*, 54 Wis. 2d 146, 152, 194 N.W.2d 822, 825 (1972). Therefore, the establishment of a new homestead while the first homestead is still for sale causes an abandonment of the prior homestead. However, here the Moores had not established a new homestead while their Rhinelander home was for sale. It should also be noted that once an owner has removed herself or himself from a homestead with no intent to reoccupy or sell the house and use the proceeds to procure another homestead, the exemption on that homestead is lost. Such owner cannot thereafter claim the house exempt unless he or she has, through overt acts, reestablished the premises

as a homestead. *In re Fish*, 214 Wis. 464, 466, 253 N.W. 387, 388 (1934).

## BURDEN OF PROOF

While a debtor's assertion of a homestead exemption generally establishes a presumption that the property is homestead property, *Reckner*, 105 Wis. 2d at 437, 314 N.W.2d at 165, this presumption is rebutted when the owner claiming the homestead exemption does not occupy the premises. When the owner no longer occupies the premises, the burden is on the owner to show that she or he intends to return and reoccupy the premises as a homestead. *Jarvais v. Moe*, 38 Wis. 440, 446 (1875). Similarly, it follows that once the Moores had removed themselves from the premises, it was their burden to establish that they intended to sell the house and use the proceeds to procure a new homestead.

Therefore we remand this matter to the circuit court in order to determine whether the Moores intended to sell their house in Rhinelander and use the proceeds to procure a new homestead.

*By the Court.*—Order reversed and cause remanded for further proceedings.