2021 WI App 39

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2020AP898

Complete Title of Case:

**JEFFERY D. ANDERSON AND LORI J. ANDERSON,**

**PLAINTIFFS-RESPONDENTS,**

**V.**

**ANDERSON TOOLING, INC.,**

**DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | May 6, 2021 |
| Submitted on Briefs: | October 16, 2020 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Blanchard, and Nashold, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Christopher Stroebel* of *Stroebel Law, LLC*, Madison. |
| Respondent ATTORNEYS: | On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Kristen K. Beilke* of *Murphy Desmond S.C.*, Madison. |

# COURT OF APPEALS
# DECISION
# DATED AND FILED

## May 6, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.       2020AP898**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019CV284

**IN COURT OF APPEALS**

---

JEFFERY D. ANDERSON AND LORI J. ANDERSON,

PLAINTIFFS-RESPONDENTS,

V.

ANDERSON TOOLING, INC.,

DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Dodge County: MARTIN J. DeVRIES, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard, and Nashold, JJ.

¶1     BLANCHARD, J.  This is a dispute between a judgment creditor, Anderson Tooling, Inc. ("ATI"), and married judgment debtors, Jeffery and Lori Anderson, regarding statutory homestead exemptions claimed by the debtors. The Andersons each claim an exemption as protection from a judgment lien that would

otherwise attach to the Andersons' residential property in Dodge County. *See* WIS. STAT. §§ 806.15(1) (addressing judgment liens), 815.20(1) (addressing homestead exemptions) (2019-20).[1]  In 2015, ATI entered a money judgment against the Andersons, from an Iowa state court, in the judgment and lien docket for Dodge County.  In 2019, the Andersons sued ATI in Dodge County Circuit Court, seeking a declaratory judgment that the Anderson's property was their homestead and that this entitled them to execute a recordable release from the judgment lien under § 815.20(2).  The circuit court granted summary judgment to the Andersons.  ATI appeals.

¶2     There is no dispute that the Andersons' Dodge County property was their homestead when ATI entered the Iowa judgment on the Dodge County docket, and that this exempted the Andersons' equity interests in the residential property from a judgment lien as of that moment in time.  *See* WIS. STAT. § 815.20(1).  ATI alleges, however, that in 2019 the Andersons ceased to occupy this property as their homestead.  Based on this allegation of fact, ATI argues that the Andersons invalidated (in statutory terms, it "impaired") the exemptions.  *See* § 815.20(1).

¶3     We assume without deciding that the following premise advanced by ATI is an accurate statement of law:  when a Wisconsin homestead exemption is valid as of the time when a judgment is entered on the judgment and lien docket, the exemption can then become "impaired" because the judgment debtors abandon the homestead, allowing the docketed judgment to become a lien attaching to the

---

[1] All references to the Wisconsin Statutes are to the 2020-21 version unless otherwise noted.

residential property at issue. Having made that assumption about the law, we conclude that summary judgment in the Andersons' favor was appropriate because there is no genuine issue of fact that could be resolved to show that the Andersons impaired their exemptions through abandonment of the homestead after docketing.

## BACKGROUND

¶4      At all pertinent times, Jeffery and Lori Anderson have been married. Both Andersons were employed by ATI, which is based in Fairfield, Iowa. Lori's ATI job ended in 2008, and Jeffery's in 2011. Until after Jeffery stopped working for ATI, the Andersons resided in Fairfield. A number of the Andersons' extended family members also lived in Fairfield.

¶5      After Jeffery no longer worked at ATI, ATI and the Andersons became involved on opposite sides of extensive litigation in Iowa state court. *See Anderson v. Anderson Tooling, Inc.*, 928 N.W.2d 821, 823-26 (Iowa 2019). Neither side develops any argument in this appeal related to the merits of any issue in the Iowa litigation. All that matters here is the existence of a money judgment in ATI's favor against the Andersons that resulted from the Iowa litigation.

¶6      While the Iowa litigation was pending, in 2012, the Andersons sold their residential property in Iowa and moved to Wisconsin. In 2014, they purchased the residential property in Dodge County that is the subject of the contested homestead exemptions in this case.

¶7      A trial in 2015 resulted in the judgment in ATI's favor, which was upheld on appeal. *See id.* at 825-26 (affirming trial court's post-verdict decision to extend ATI's judgment to include both Jeffery and Lori). ATI had the amended

judgment entered in the judgment and lien docket for Dodge County in December 2015.

¶8 We interrupt the background chronology to briefly summarize Wisconsin law addressing homestead exemptions. Under WIS. STAT. § 990.01(14), an "exempt homestead" is a person's "dwelling … and so much of the land surrounding it as is reasonably necessary for its use as a home." *See* § 990.01(intro), (defining "exempt homestead" for the "construction of Wisconsin laws"). There is no dispute that at all pertinent times here the Wisconsin property met the definition of a homestead in § 990.01(14).

¶9 WISCONSIN STAT. § 815.20(1) provides in part that "[a]n exempt homestead … selected by a resident owner and occupied by him or her shall be exempt … from the lien of every judgment."[2] *See also* WIS. STAT. § 806.15(1)

---

[2] In its entirety, WIS. STAT. § 815.20 provides:

> (1) An exempt homestead as defined in s. 990.01(14) selected by a resident owner and occupied by him or her shall be exempt from execution, from the lien of every judgment, and from liability for the debts of the owner to the amount of $75,000, except mortgages, laborers,' mechanics,' and purchase money liens and taxes and except as otherwise provided. The exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale of the homestead, but shall extend to the proceeds derived from the sale to an amount not exceeding $75,000, while held, with the intention to procure another homestead with the proceeds, for 2 years. The exemption extends to land owned by husband and wife jointly or in common or as marital property, and each spouse may claim a homestead exemption of not more than $75,000. The exemption extends to the interest therein of tenants in common, having a homestead thereon with the consent of the cotenants, and to any estate less than a fee.

> (2) Any owner of an exempt homestead against whom a judgment has been rendered and entered in the judgment and lien

(continued)

(providing in part that "[e]very judgment properly entered in the judgment and lien docket … shall … be a lien on all real property of every person against whom the judgment is entered which is in the county where the judgment is rendered, *except homestead property that is exempt from execution under s. 815.20*, and which the person has at the time of the entry or which the person acquires thereafter within the 10-year period." (emphasis added)). Further, there is a cap on the amount of the exemption: "each spouse may claim a homestead exemption of not more than $75,000." Sec. 815.20(1).

¶10 The function of a homestead exemption is to protect the judgment debtor's equity in the homestead. *See **Rumage v. Gullberg***, 2000 WI 53, ¶27, 235 Wis. 2d 279, 611 N.W.2d 458, *amended on denial of reconsideration*, 2000 WI 112, 238 Wis. 2d 844, 617 N.W.2d 849. A judgment lien attaches to any equity of the debtor that exceeds the exemption cap, creating a situation in which a homestead is merely "partially exempt" from the lien, given the amount of the lien. *See **id.*** However, there is no dispute here that the Andersons' equity in the Wisconsin property would be "fully exempt" if the exemptions apply. *See **id.***, ¶28.

¶11 Returning to the chronology, in January 2019, Jeffery accepted full-time employment with a Fairfield, Iowa company (not ATI) owned by a son of the Andersons. The drive between Fairfield and the Andersons' Wisconsin property is

_____

docket, and any heir, devisee, or grantee of the owner, or any mortgagee of the homestead, may proceed under s. 806.04 for declaratory relief if the homestead is less than $75,000 in value and the owner of the judgment shall fail, for 10 days after demand, to execute a recordable release of the homestead from the judgment owner's judgment lien.

about five hours. Lori had already been employed part-time by the same company. It is undisputed that Jeffery's job generally required that, on work days, he be physically present in the Fairfield area, while Lori primarily worked remotely from the Wisconsin property.

¶12 As we describe in more detail below, it is undisputed that the Andersons planned to eventually make a permanent move from Dodge County to Fairfield. More specifically, there is no dispute that, from at least January through November 2019 and while each of them (particularly Jeffery) spent significant periods of time in Fairfield, they took steps toward accomplishing this planned move. This included making arrangements with relatives in Fairfield for housing that could become their permanent residence. In April 2019, these relatives purchased a residential property in Fairfield ("the Iowa property"), based on the Andersons' interest in moving to Iowa. The Andersons paid rent on the Iowa property and expressed interest in eventually purchasing it.

¶13 The Andersons listed their Wisconsin property for sale on May 22, 2019, and accepted an offer to purchase on the same day. However, as far as the evidence submitted on summary judgment shows, the sale did not close and the Andersons continued to own the Wisconsin property.

¶14 In June 2019, the Andersons filed this lawsuit against ATI. The Andersons sought a declaratory judgment that they could claim the Wisconsin property as their homestead for exemption purposes and therefore the Andersons were entitled to the execution of a recordable release from ATI's judgment lien as provided in WIS. STAT. § 815.20(2).

¶15 The Andersons moved for summary judgment. They argued that the Wisconsin property was their homestead as of the moment when ATI docketed its

judgment, and that this moment is the only relevant time period when determining if the exemptions would prevent ATI's judgment from attaching a judgment lien to the property.

¶16 ATI countered based on the premise that an exemption that is valid at the time of judgment docketing can become "impaired" when the judgment debtor later abandons the homestead. *See* WIS. STAT. § 815.20(1) (carving out two circumstances in which "the homestead exemption is not impaired" despite a lack of occupancy by the owner for some identified period of time). Based on that premise, ATI argued that there was a genuine dispute, suitable for trial, as to whether the Andersons had impaired their exemptions by abandoning the Wisconsin homestead during the following time frame: after Jeffery began Iowa-based employment in January 2019, but before the Andersons listed the Wisconsin property for sale in May 2019 and accepted an offer.

¶17 The circuit court agreed with the Andersons that the only time period relevant to the determination of whether a property is exempt from a lien of judgment is the moment of the judgment's docketing, and therefore any activities of the Andersons after the moment of docketing in 2015 must be ignored. The court noted that there was no evidence that the Andersons had abandoned their homestead *before* ATI docketed its judgment in Dodge County, and ATI has never contested this point.

¶18 In the alternative, the circuit court concluded that, even if the Andersons could have impaired their exemptions after the docketing, summary judgment in their favor was still appropriate. This ruling was based on a feature of WIS. STAT. § 815.20(1), which we explain below. This feature carves out a circumstance in which an "exemption is not impaired," despite the fact that the

judgment debtor is not occupying the property at issue, because the debtor has sold the property with the intent to use the proceeds to obtain a new homestead. Here, the circuit court determined, the summary judgment evidence showed that the Andersons "intend to sell the Dodge County home and use the proceeds to purchase another home," and that "they have not simply walked away from" the Wisconsin property. On these independent bases, the court concluded that the Andersons were entitled to a declaratory judgment that they maintained exemptions in the Wisconsin property.[3] ATI appeals.

## DISCUSSION

¶19 ATI argues that, based on the summary judgment evidence, there is a genuine dispute of fact on the material issue of whether the Andersons impaired their homestead exemptions because they allegedly abandoned their shared Wisconsin homestead and then established a new homestead in Iowa before selling the Wisconsin property. As part of this argument, ATI contends that the evidence shows that in Spring 2019 the Andersons "removed" themselves from the premises of the Wisconsin property with the intent to acquire a new Iowa homestead and that, by the time they listed the Wisconsin property for sale in May 2019, they made their return trips to the Wisconsin property as visitors, not homestead residents. *See Moore v. Krueger*, 179 Wis. 2d 449, 454-59, 507 N.W.2d 155 (Ct. App. 1993) (addressing, under the terms of WIS. STAT.

---

[3] Pursuant to the circuit court's grant of declaratory judgment, the Andersons sought and obtained an additional order directing ATI to release its lien, but ATI does not independently challenge that separate order. ATI filed a motion to stay the order directing release of the lien pending its appeal of the summary judgment. The circuit court denied ATI's request for an order to stay. In sum, in this appeal ATI challenges only the circuit court's decision to grant the Andersons' motion for summary judgment.

§ 815.20(1), whether judgment debtors had "impaired"—that is, invalidated—their exemptions based on their intentions when they "removed themselves" from the premises of their homestead—that is, when they failed to occupy the premises).

¶20 The Andersons argue that there is no dispute based on the evidence in the summary judgment record that, from January 2019 through the time of the circuit court's decision, the Andersons continued to own and occupy the Wisconsin property, and that this makes it unnecessary to inquire into their intentions over that time period. The Andersons further contend that, even if they are deemed to have occupied the Iowa property, there is an alternative basis to affirm the grant of summary judgment. Specifically, they contend that, under *Moore*, even an alleged move to Iowa would not have constituted the establishment of a new homestead in Iowa, because the evidence shows that their plan was to use the proceeds from a sale of the Wisconsin property to procure a new homestead in Iowa.[4] *See Moore*, 179 Wis. 2d at 454, 456-57.

¶21 We conclude that there is no genuine issue of fact that, while Jeffery or Lori or both of them temporarily removed themselves from the Wisconsin premises to live in Iowa during pertinent times, they consistently reoccupied the Wisconsin property as their homestead following these temporary periods away from the Wisconsin property and that at no point did they establish a new

___

[4] We understand the Andersons to argue in the alternative that ATI forfeited any objection to the Andersons asserting their homestead exemptions in the Wisconsin property by failing to object when the Andersons asserted the exemptions in bankruptcy proceedings that they commenced in 2016. We resolve this appeal on other grounds and do not address this alternative argument. We observe that the argument depends in part on the Andersons' position that an exemption may not be impaired through abandonment of the homestead with respect to a judgment that was docketed at a time when a valid exemption existed, which is an issue that we do not otherwise resolve in this appeal.

homestead in Iowa.[5]  Before explaining this conclusion and our rejection of ATI's argument further, we provide applicable legal standards, including pertinent principles of homestead law, then provide additional factual background.

### I. Legal Standards

¶22    We review the grant of summary judgment as part of a declaratory action in the same manner as any other summary judgment, which we review de novo. *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶¶33-34, 309 Wis. 2d 365, 749 N.W.2d 211.  "A party is entitled to summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.*, ¶34 (citing WIS. STAT. § 802.08(2)).

¶23    We liberally construe the homestead statutes in favor of judgment debtors who assert homestead exemptions over judgment creditors, including those who docket judgment liens. *See* WIS. STAT. § 815.20; *see also* *CVW, Ltd. v. Stress*, 230 Wis. 2d 450, 455, 602 N.W.2d 162 (Ct. App. 1999); *Moore*, 179 Wis. 2d at 454 (construing § 815.20(1) "liberally to protect the homeowner" from

---

[5]  In reaching this conclusion, we need not determine whether one spouse, Jeffery or Lori, could individually abandon the homestead while the other spouse does not, with the result that only one of their exemptions is impaired.  *See* WIS. STAT. § 815.20(1) ("The exemption extends to land owned by husband and wife jointly or in common or as marital property, and each spouse may claim a homestead exemption of not more than $75,000.").  Assuming without deciding that such an outcome is possible in some factual scenarios, the evidence here would not support it.  That is, assuming all reasonable inferences in favor of ATI, the differences in the evidence regarding the individual conduct and intentions of Jeffery as opposed to those of Lori would not alter our conclusion, even if such an outcome were possible.  Further, neither party argues that we can or should conclude that only one of the Andersons did or did not impair his or her exemption.  Accordingly, following the shared implied premises of the parties that either both of them impaired their homestead exemptions or neither did, we sometimes discuss the Andersons as a unit.

a judgment lien).[6]  However, courts are not allowed to pursue liberal construction to the point of writing protections into § 815.20.  *See Master Lock Credit Union v. Rayford*, 119 Wis. 2d 301, 303, 349 N.W.2d 737 (Ct. App. 1984) (citing *Schwanz v. Teper*, 66 Wis. 2d 157, 163, 223 N.W.2d 896 (1974)); *see also Plan Credit Corp. v. Swinging Singles, Inc.*, 54 Wis. 2d 146, 151, 194 N.W.2d 822 (1972) ("'The homestead claimant is entitled only to that which the statute has conferred upon him; the courts cannot protect what is not homestead.'" (quoted source omitted)).

¶24     Generally speaking, actual occupancy of the homestead is required to allow a judgment debtor to claim an exemption.  That is, to qualify for the exemption in WIS. STAT. § 815.20(1), a debtor generally needs to own or lease property that the debtor in fact occupies as his or her homestead.  *See Moore*, 179 Wis. 2d at 454 (noting that, under § 815.20(1), "a homestead selected by a resident owner and occupied by the owner is exempt from certain creditors"); *Fish v. Ewing*, 214 Wis. 464, 467, 253 N.W. 387 (1934) ("Present right of occupancy is

---

[6] Wisconsin's laws protecting homesteads have their roots in our state constitution, as we have explained:

> The homestead exemption was enacted pursuant to Article I, Section 17 of the Wisconsin Constitution, which provides:  "The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted."  The purpose of the homestead exemption is to preserve judgment debtors and their families their homes and yet leave them at liberty to change homesteads by sale, or to remove for temporary convenience, without forfeiting the exemption.  *Zimmer v. Pauley*, 51 Wis. 282, 285, 8 N.W. 219 (1881).

*Moore v. Krueger*, 179 Wis. 2d 449, 457-58, 507 N.W.2d 155 (Ct. App. 1993).

essential to entitle one to homestead rights."). As to the "lease" aspect, "there can be no doubt" under the predecessor statute to § 815.20(1), "that a homestead may be secured in premises held under a lease." *Beranek v. Beranek*, 113 Wis. 272, 275, 89 N.W. 146 (1902).

¶25 However, the statute carves out two distinct circumstances in which "the homestead exemption is not impaired" despite a lack of occupancy by the owner for some identified period of time: (1) a "temporary removal exception," which involves an owner's intentionally transient absence from the homestead; and (2) the owner's sale of the homestead with intent to use the proceeds to obtain a new homestead. *Moore*, 179 Wis. 2d at 454 (citing WIS. STAT. § 815.20(1)).

¶26 The temporary removal exception is met when the judgment debtor effects "temporary removal with the intention to reoccupy the premises as a homestead." WIS. STAT. § 815.20(1). "In order to fall under the temporary removal exception," the owner's self-removal from the premises "has to be made 'with a certain and abiding intention to return to the premises and reside there.... A vague intention to return someday is insufficient.'" *Moore*, 179 Wis. 2d at 455 (quoted source omitted).

¶27 The exception addressing sale with intent to buy a new homestead is stated as follows: "the sale of the homestead … extend[s]" the judgment debtor's exemption "to the proceeds derived from the sale" for up to two years, so long as the debtor holds the proceeds "with the intention to procure another homestead with the proceeds" from the sale. WIS. STAT. § 815.20(1); *see Moore*, 179 Wis. 2d at 452 n.1, 454. Under this exception, in contrast to the temporary removal exception, a debtor may retain the exemption despite failing to occupy the homestead property on an indefinite basis, so long as he or she intended, at the

time occupation of the property stopped, to sell it and to use the sales proceeds to purchase a new homestead. *See id.* at 456-59. In *Moore*, we addressed a claim of the sale with intent to buy a new homestead exception. We determined that the homestead statute did not require a judgment debtor to occupy the homestead up until the sale of the homestead "was consummated" in order to preserve the exemption in the proceeds from that sale. *Id.* at 457-58.

¶28 The combined result of these two exceptions to the general occupancy requirement is that the "exemption on [a] homestead is lost" (in statutory terms, it is "impaired") when the debtor "removed herself or himself from a homestead with no intent to [either] reoccupy or [to] sell the house and use the proceeds to procure another homestead." *See id.*

¶29 The two exceptions operate consistently with another homestead law principle, namely, "the rule that a person can only have one homestead at a time." *Id.* at 458 (citing *Plan Credit Corp*, 54 Wis. 2d at 152, which cites *Jarvais v. Moe*, 38 Wis. 440, 446 (1875)). Under this one-homestead-at-a-time principle, "the establishment of a new homestead while the first homestead is still for sale causes an abandonment of the prior homestead," and the exemption of that property ceases. *Id.*; *see also Jarvais*, 38 Wis. at 446 (if a judgment debtor "remov[es]" him or herself from the premises of a homestead with the intent "to live elsewhere indefinitely," and "acquire another home, the exemption of his [or her] former homestead ceases, because it ceases to be his [or her] homestead."). This is true even when the judgment debtor, having established a new homestead, intends to sell the prior homestead and use the proceeds to pay down a loan that was used to finance the purchase of the new homestead. *See Plan Credit Corp.*, 54 Wis. 2d at 152.

13

¶30     We round out the legal standards by noting burdens of proof that apply to the homestead exemption principles just summarized.  A judgment "debtor's assertion of a homestead exemption generally establishes a presumption that the property is homestead property."  *Moore*, 179 Wis. 2d at 459.  A judgment creditor may rebut this presumption by showing that the debtor claiming the exemption does not occupy the claimed homestead, including for the reason that the debtor has established a new homestead before having sold the homestead on which he or she claims the exemption.  *See id.* at 458-59; *Hauser v. Schauer*, 215 Wis. 75, 79, 254 N.W. 343 (1934) (the presumption that a debtor "is at home where he is found living" "may be rebutted by showing his abode [is] temporary, and his home [is] elsewhere").  When a debtor ceases to occupy the premises of the claimed homestead, it is the debtor's burden to show that the circumstances qualify for one of the two exceptions to impairment based on the debtor's absence from the homestead.  *See Moore*, 179 Wis. 2d at 458-59.

## II.  Analysis

¶31     We begin by noting that the Andersons rest in part on the presumption we have just referenced.  They point to the fact, not disputed by ATI, that they have consistently asserted that their homestead entitles them to a release from the judgment lien.  Beyond this presumption, the Andersons note that the following points are undisputed.  They owned the Wisconsin property from 2014 through the circuit court's rendering of summary judgment in this case, even if they did put it up for sale and accepted an offer; they occupied the Wisconsin property as their homestead before January 2019, when Jeffery began working in Iowa; and either Jeffery or Lori or sometimes both of them consistently occupied the Wisconsin property between trips to Iowa, from January 2019 onward, which

is the time frame in which ATI alleges they abandoned the Wisconsin property as their shared homestead.

¶32 Yet although the Andersons have the benefit of the presumption and these undisputed facts, in order to prevail on their motion for summary judgment they must show that there is no evidence that could reasonably support a determination that their actions fell outside both of the exceptions to WIS. STAT. § 815.20(1)'s occupancy requirement. Put differently, they must show that there is no genuine issue of fact that at least one of the two exceptions to impairment of the homestead exemptions applies here.

¶33 Based on our de novo consideration of the summary judgment record, we conclude, regarding the first exception, that there is no dispute that each pertinent absence by either or both of the Andersons from their Wisconsin property (namely, the Iowa trips and stays) was done with an intent to reoccupy the Wisconsin property as their homestead. As to the second exception, we conclude that there is no dispute that, during each of these absences, the Andersons intended to sell the Wisconsin property and use the proceeds to procure a new homestead in Iowa. Both of these conclusions are based in part on our further determination that there is no genuine issue of fact that at no point did the Andersons establish a new homestead in Iowa. Before explaining these conclusions further and addressing ATI's arguments to the contrary, we provide additional background.

**A. Additional Background**

¶34 The time frame for all pertinent events begins in January 2019, when Jeffery began working for his son's company in Iowa. The parties do not dispute that, before then, the Andersons occupied the Wisconsin property as their

15

homestead. The parties are less clear about the proper ending point. In any case, our review is limited to the record as it existed at the time of the circuit court's grant of summary judgment in April 2020. *See Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 556, 508 N.W.2d 610 (Ct. App. 1993) ("our review is confined to the facts in the record before the [circuit] court at the time it decided the motion for summary judgment"). The evidence of latest-in-time activity or representations in the record dates from November 2019, which is when various witnesses were deposed, including the Andersons.[7]

¶35 The Andersons both testified that, from the time Jeffery started working for his son's company in Iowa and continuing to the time of the Andersons' depositions (*i.e.*, January through November 2019), Jeffery and Lori stayed with Lori's parents whenever either of them stayed overnight in Fairfield. This was corroborated by the deposition testimony of Lori's mother and the Andersons' son, and it was not rebutted by other evidence submitted on summary judgment.

¶36 Before April 5, 2019, the Andersons explored the possibility of buying a house or having a nephew construct one on an empty lot in Iowa. But on April 5, Jeffery told the nephew in an email that the Andersons were instead "getting a small house to fill [their] current needs." Earlier, in late March, Jeffery's sister and brother-in-law had told the Andersons that the sister and brother-in-law were considering buying a residential property in Fairfield that they

---

[7] We further note that phone records in the summary judgment submissions provide evidence regarding both of the Andersons' whereabouts from January to August 2019, while the Andersons' written discovery responses aver dates when Jeffery was allegedly present in Iowa up to September 2019.

could rent to the Andersons. In April 2019 these relatives proceeded to buy and hold onto the property, without renting it out to anyone, so that it would be available for the Andersons to rent when they were ready to move to Iowa.

¶37 Regarding the Iowa property, the Andersons both averred that they communicated to the relatives that they had "an interest in renting the home with an option to purchase it" from the relatives, provided that the Andersons were "able to sell" the Wisconsin property. Lori testified that the Andersons paid rent on the Iowa property starting in June 2019 in order to have "something lined up" as a potential Fairfield residence before listing their Wisconsin property, because they believed it would sell quickly. She further testified that they did not sign a rental agreement on the Iowa property with the relatives. When all disputed facts and reasonable inferences are considered in ATI's favor, a jury could find that the Andersons began paying rent on the Iowa property early enough in 2019 that there was still snow cover on the ground.

¶38 Lori testified that she and Jeffery did not "furnish" the Iowa property, but that they did move from the Wisconsin property to the Iowa property what they referred to as "storage items," a couch, and a bed. Lori and the Andersons' son both testified that they invested some time and resources into improving the Iowa property. When all reasonable inferences from the evidence are resolved in ATI's favor, this could have included the Andersons making arrangements to have appliances installed and hiring a contractor to perform renovations on the kitchen and garage.

¶39 Lori testified that in June 2019, due to this pending litigation over the homestead exemptions, the Andersons canceled their plans to move to Iowa and put on hold the closing of the sale of the Wisconsin property. She further

testified that, depending on how this litigation is resolved, the Andersons "maybe won't move" to Iowa.

¶40     As noted, from the time Jeffery began working for his son in Iowa onward, there is no dispute that he spent most of his time in Iowa.  Lori returned to Wisconsin more frequently than Jeffery did, but there were stretches of multiple weeks when she spent more time in Iowa than Wisconsin—both before and after the Andersons began paying rent on the Iowa property.

### B.  Intent To Reoccupy Wisconsin Property As Homestead

¶41     We turn to the application of the two exceptions to impairment based on these facts, when considered in the light most favorable to ATI, beginning with the first exception.   To recap, this addresses temporary absences from the Wisconsin property with intent to reoccupy the Wisconsin premises as a homestead.  Based on the summary judgment record, there is no dispute that the Andersons' absences from the Wisconsin property were temporary.  When each of the Andersons made trips to Iowa, even trips lasting for weeks at a time, they consistently would return to the Wisconsin property.  The Andersons' temporary absences from the Wisconsin property would create a triable issue only if they absented themselves from it without intending to return to it as their homestead, as would be the case if they had established the Iowa property as a new homestead and returned to the Wisconsin property as mere visitors.  WIS. STAT. § 815.20(1); *Moore*, 179 Wis. 2d at 458.

¶42     ATI fails to bring to our attention, and we do not discern, evidence that could raise a genuine issue that the Andersons did not at all pertinent times have an intent to return to the Wisconsin property as their residence.  The only suggestion of an intent to reside elsewhere involved their contemplation of a

*potential* move to the Iowa property. Further, there is no evidence from which it could be reasonably inferred that they ever actually made a permanent move to the Iowa property. We now explain this conclusion in more detail, analyzing the record before and after the Iowa property comes into the picture, while addressing ATI's arguments to the contrary.

¶43 Before late March 2019, when the Andersons began making arrangements regarding the Iowa property, there is no evidence that they had selected a specific Fairfield-area property as a future homestead, much less that they had selected any property to be their homestead at that time. Setting aside ATI's generalized challenges to the Andersons' credibility that we address below, ATI does not contest that, at least for this January-March 2019 time period, one or both of the Andersons stayed with Lori's parents. It is not disputed that these stays with Lori's parents occurred regularly and that some lasted a week or more. Nevertheless, we see no evidence that could support an argument that the Andersons were residing in any Iowa location during the pertinent time period other than as regular but temporary guests of the parents. Further, we see no evidence that they intended to move in with the parents on a permanent basis, and ATI does not argue to the contrary. In sum, there is no evidence to show that the Andersons understood that any property other than the one they owned and frequently occupied in Wisconsin was their residence while they continued to explore potential options for a new Fairfield-area residence.

¶44 As to the January-March 2019 period, ATI argues, it is reasonable to infer that the Andersons abandoned their Wisconsin homestead based on the fact that they looked for a new homestead while spending extended periods of time in Fairfield. Specifically, ATI contends that the Andersons' "decision to move to Fairfield is inconsistent with an intent to maintain the [Wisconsin property] as

their homestead, and therefore constitutes evidence of its abandonment," citing *Moore*, 179 Wis. 2d at 455 ("When owners remove themselves from a house with the fixed intent to sell the house, logic leads us to conclude that they did not intend to reoccupy the house as a homestead."). We reject this argument for the following reasons.

¶45 It is true that there is no dispute that the Andersons were actively looking for a potential homestead in the Fairfield area to replace their Wisconsin homestead. The Andersons planned to reach a point when they would no longer return to the Wisconsin property as their homestead. Under this plan they would probably live in Fairfield, perhaps in the Iowa property purchased by their relatives. However, WIS. STAT. § 815.20(1) provides that temporary absences from the homestead with the intent to reoccupy it as a homestead do not impair the judgment debtor's exemption. To preserve the exemption, the debtor is not required to intend to *permanently* reoccupy the homestead. Section 815.20(1) contemplates plans to change homesteads, which in the case of a homestead's sale will typically involve occupancy of the homestead to be sold for a limited period of time before the change to a second homestead can occur (provided that, under the one-homestead-at-a-time rule, the occupation of the homesteads is serial, and not an attempt to maintain two homesteads simultaneously). Here, as noted, the Andersons' absences ("removals") from the premises of the Wisconsin property were not permanent. They repeatedly returned to and stayed at the Wisconsin property, not as visiting landlords as in *Moore*, but as owner-occupiers. Under § 815.20(1) their temporary absences did not impair the exemption, even if the Andersons planned that their serial absences and reoccupancies of the Wisconsin property as their homestead would eventually end with the establishment of a new homestead, perhaps even in the near future.

¶46    Moving ahead in the chronology, we conclude that there is no evidence showing a material change in circumstances after April 2019. More specifically, there is no evidence related to the latter time period which shows that the Andersons actually established a new homestead at the Iowa property. Instead, the most that could be reasonably inferred in ATI's favor is that the Andersons continued to make arrangements in contemplation of an eventual move to the Fairfield area.

¶47    Resolving all disputed facts and drawing reasonable inferences in ATI's favor, the Andersons made some improvements to the Iowa property in the nature of painting and minor renovations, and stored some personal property there. But these were merely steps toward a potential move and do not show that the Andersons had actually occupied the Iowa property as their homestead. Instead, the evidence that ATI relies on establishes only that the Andersons themselves understood the Iowa property to be, in the words of their affidavits, "*a* home" for them, one that they intended to make their future homestead contingent on future events.[8]  (Emphasis added.)

¶48    ATI asserts that the Andersons obtained a leasehold interest in the Iowa property before, by the Andersons' own account, they started to pay rent in June 2019. But this potential interest does not alter our conclusion that they did not establish a new homestead in Iowa. Merely having a property right to what could become a new homestead *if it were occupied as a homestead* does not, on its

---

[8]  Among other factual references that ATI makes without citation to the record, it asserts that the Andersons referred to the Iowa property as "*their* 'home.'" (Emphasis added). This argument is not connected to the record evidence.

own, lead to the establishment of a new homestead and the abandonment of an old one. *See Moore*, 179 Wis. 2d at 458 (judgment debtor did not establish new homestead merely by renting and occupying apartment in another city). Actual occupancy as a homestead is required. WIS. STAT. § 815.20(1).

¶49    In sum, we discern no evidence that could serve as a basis for ATI to argue at a trial that, at any point during the pertinent time period, the Andersons did not regularly reoccupy the Wisconsin property, which had been their undisputed homestead before, and without establishing a new homestead. Under these circumstances we conclude that, based on the undisputed evidence, it would not be reasonable to infer that the Andersons removed themselves from the premises of the Wisconsin property without the intent to reoccupy it as their homestead.[9]

¶50    *Moore* reinforces our conclusion. In *Moore* we determined that the judgment debtors had not established a new homestead based on facts somewhat similar to the facts here: the judgment debtor and his family had put the

---

[9] We clarify that our conclusion that the Andersons did not establish a new homestead in the Iowa property is not based on the fact that they rented the Iowa property (with plans that included potentially buying it), as opposed to owning it. While WIS. STAT. § 815.20(1) refers to a person claiming a homestead exemption as a "resident *owner*," a homestead exemption can exist in a leasehold interest. The final sentence of § 815.20(1) extends the homestead exemption "to the interest … of tenants in common, having a homestead thereon with the consent of the cotenants, and to any estate less than a fee." Our supreme court in *Beranek* applied a predecessor statute containing substantially similar language. *Beranek v. Beranek*, 113 Wis. 272, 275, 89 N.W. 146 (1902); WIS. STAT. § 2983 (1898) (the statute provided, "Such exemption shall extend … to the interest therein of a tenant in common …, and to any estate less than a fee held by any person by lease or otherwise."). The court went on to state that "in so far as leased property is susceptible of being conserved as a home, it is governed by the same rules that apply to homesteads based upon property held by more enduring titles." *Id.*; *but see Master Lock Credit Union v. Rayford*, 119 Wis. 2d 301, 304, 349 N.W.2d 737 (Ct. App. 1984) ("homestead rights are no greater than are the underlying property rights at the time that a homestead obtains").

homestead at issue up for sale; the debtor moved out of the homestead and into an apartment in a different city, where the debtor had taken a new job; and, while the family was absent from the homestead, they rented it out to tenants subject to a lease provision requiring the tenants to vacate if it sold. *See Moore*, 179 Wis. 2d at 453, 458. Thus, under *Moore*, a new homestead is not necessarily established even after the judgment debtors (1) completely and indefinitely cease to occupy a homestead that they have put up for sale and (2) occupy an apartment elsewhere. ATI fails to come to grips with this result in *Moore*.

¶51 ATI argues that the Andersons' credibility is open to doubt. It contends that this in itself would provide a basis for a jury to infer that the Andersons had in fact already established a homestead at the Iowa property before listing the Wisconsin property for sale or while the planned Wisconsin sale was pending. More specifically, ATI contends that discrepancies between the Andersons' affidavits and other evidence later adduced in discovery creates a triable issue as to whether the Andersons have been truthful about their activities related to the Iowa property before listing the Wisconsin property for sale or while the Wisconsin sale was pending.[10]

---

[10] To give specific examples, ATI contrasts the following averments by the Andersons with other evidence:

- The Andersons averred that, since Jeffery started work in Iowa, he resided in Wisconsin "almost every weekend" and "most weekends." Jeffery's deposition testimony and phone records show that he was in Wisconsin for only 14 out of the 30 weekends between the time he started working for his son in Iowa and the filing of his affidavit.

- The Andersons averred they were "active parishioners" of a church near the Wisconsin property. Lori testified in her deposition that she had not attended services in person since February 2019 and that Jeffery usually did not attend.

(continued)

23

¶52    But this credibility argument based on particular inaccuracies that a jury could find in the Andersons' representations adds nothing that could change the results here.  Under summary judgment analysis, we already give the non-moving party ATI the benefit of the doubt on all factual disputes and potential credibility issues.  None of the potential inaccuracies that ATI cites, considered alone or in combination, would allow a jury to find that the Andersons actually occupied the Iowa property as a homestead.  Nor would they allow a jury to find more generally that the Andersons did not always intend to reoccupy the Wisconsin property as their homestead even when they were periodically absent from it and staying with Lori's parents in Fairfield.  Notably, ATI fails to identify evidence that it could reasonably rely on at a trial to argue that, after the Andersons made arrangements to rent and then actually paid rent on the Iowa property, they did not continue to stay exclusively with the parents as guests whenever they were in the Fairfield area.  In other words, ATI cannot point to any evidence contrary to the testimony that the Andersons never occupied the Iowa property as their homestead.

¶53    More generally, ATI's credibility argument appears to rest on the premise that it could invite a jury to speculate as to the "true" scope of the Andersons' activities with respect to the Wisconsin and Iowa properties, not based on any evidence or reasonable inferences arising from evidence, but only because the truth must be the opposite of whatever they testify to.  "[S]peculation is

---

- Jeffery averred that the majority of his medical providers were located in Wisconsin. Evidence produced in discovery appears to reflect that, from the time he began working in Iowa, Jeffery received more medical care from providers in Iowa than in Wisconsin, and had more Iowa providers.

insufficient to create a genuine issue of material fact on summary judgment." ***North Highland Inc. v. Jefferson Mach. & Tool Inc.***, 2017 WI 75, ¶34, 377 Wis. 2d 496, 898 N.W.2d 741.

¶54 It is true, as ATI notes, that dispositive questions of subjective intent should "ordinarily be determined by the trier of fact." *See **Gouger v. Hardtke***, 167 Wis. 2d 504, 516-17, 482 N.W.2d 84 (1992). However, we have explained why, setting aside the Andersons' testimony regarding their subjective intent, there is simply no other evidence—based on their conduct, their statements, or other witness testimony—showing that they did not intend to reoccupy the Wisconsin property as their homestead before its sale.[11]

### C. Intent To Sell Wisconsin Property To Procure New Homestead

¶55 Having decided that there is no genuine dispute that the Andersons' temporary absences from the Wisconsin property were with an intent to reoccupy it as their Wisconsin homestead and that they did not establish a new homestead in Fairfield, we need not address the second exception to impairment based on

---

[11] Similarly, the following discussion in ***Hauser v. Schauer***, 215 Wis. 75, 79, 254 N.W. 343 (1934), cited by ATI, does not support ATI's argument that its ability at trial to question the Andersons' credibility creates a genuine and material issue of fact:

> While it is always proper for one claiming a homestead exemption to testify as to what his [or her] intentions were at the time of removing from his [or her] homestead, such professions are of little force or effect when they are of an *ex post facto* character and made after intervening occurrences have made such professions advantageous.

Thus, the claimed subjective view of the judgment debtor regarding homestead status is simply part of the overall circumstances to be considered. And here, none of the Andersons' proven conduct, even assuming all inferences in favor of ATI, is inconsistent with their stated plans to move into the Iowa property as their homestead only in the future.

absence from the homestead—namely, self-removal with the intent to sell the homestead and use the proceeds to procure a new homestead. However, in the interest of completeness we explain why we conclude that this exception also applies.

¶56 To repeat, there is no dispute that the Andersons intended to sell the Wisconsin property and had even accepted an offer to purchase. The Andersons averred that they intended to use the proceeds from the Wisconsin sale to procure a new homestead in Iowa, which other undisputed evidence establishes involved the alternative possibilities of buying the Iowa property or possibly by having a new house constructed elsewhere in Fairfield. There is no evidence regarding any alternative use the Andersons might have had for the proceeds of an eventual sale of the Wisconsin property, nor evidence that they had other resources with which to procure a new homestead. The evidence on this topic offered by the Andersons presents a prima facie case that the Andersons intended to use proceeds from the eventual sale of the Wisconsin property to procure a new homestead. ATI fails to rebut this prima facie case. *See **Baumeister v. Automated Prods., Inc.**,* 2004 WI 148, ¶12, 277 Wis. 2d 21, 690 N.W.2d 1 ("If a moving party has established a prima facie case, the opposing party must then establish that there are disputed material facts, or undisputed material facts from which reasonable alternative inferences could be drawn, that entitle such a party to a trial.").

¶57 Explaining further, ATI fails to point to evidence that could support a finding that the Andersons did not remove themselves from the premises of the Wisconsin property with the intent to sell it and procure a new homestead in Iowa with the proceeds. ATI's argument starts from unobjectionable positions. ATI might be able to prove at trial that the Andersons began planning a move back to Iowa as early as when Jeffery began working for his son's Iowa-based company,

and that, as part of this early-in-time plan, the Andersons intended to eventually sell the Wisconsin property. However, ATI fails to point to any evidence that could support an argument that the Andersons' plan did not include use of the proceeds from a sale of the Wisconsin property to procure the planned new homestead in Iowa. Further, in our own view of the record, we see nothing to contradict the proposition that the Andersons planned to finance the purchase of the Iowa property or finance the construction of a new house elsewhere in Fairfield with the proceeds from the sale of the Wisconsin property.

¶58 ATI contends that there is a reasonable argument based on the evidence that, by the time the Andersons listed the Wisconsin property in May 2019, they had already abandoned it as their homestead by establishing the Iowa property as their new homestead starting in April 2019. We reject this argument for the reasons we have stated above. ATI fails to identify a basis on which a jury could conclude that the Andersons had occupied the Iowa property during any pertinent timeframe, which would be required to establish a new homestead.[12]

---

[12] As part of this argument, ATI attempts to distinguish the facts here from those in *Moore* on the topic of a judgment debtor's "removal from" the premises of a homestead with intent to sell the homestead. Specifically, ATI emphasizes that the debtor in *Moore* listed the homestead for sale *before* moving into an apartment in another city. *See Moore*, 179 Wis. 2d at 454. ATI contrasts the facts in *Moore* with its assertion that the Andersons listed the Wisconsin property for sale *after* allegedly establishing a new homestead in Iowa. Putting aside our rejection of this assertion for reasons explained in the text, we agree with the Andersons that our reasoning in *Moore* did not depend on the fact that the judgment debtor had listed the homestead for sale. Listing a residential property for sale is no doubt strong evidence of an intent to sell it. Yet we see no reason that a judgment debtor could not use other types of evidence to show that he or she has formed an intent to sell and use the proceeds to procure another homestead. And as we explain in the text, in this case ATI fails to point to evidence that could reasonably support the inference that the Andersons did not intend to use the proceeds from the sale of the Wisconsin property to procure a homestead in Iowa.

¶59    ATI states that "[w]hether this case even concerns the application of an exemption in sales proceeds is dubious because the Andersons had not sold their [Wisconsin] home at the time the circuit court granted summary judgment." It is unclear what ATI means to argue along these lines. In *Moore*, we concluded that the judgment debtors' self-removal from the premises of their homestead with the intent to sell did not necessarily result in its abandonment, even if the absence was not temporary. *Moore*, 179 Wis. 2d at 456. Applying here the logic of *Moore*, as we are obligated to do, we do not see how it could matter whether the Andersons had not yet acquired the proceeds of a sale of the Wisconsin property at the time of discovery in this case. As *Moore*'s interpretation of the statutory language makes clear, what matters is that the Andersons could not impair their exemptions though absences from their homestead, provided that the absences were done *with the intent to sell it and procure new homestead*. *See id.* at 459 (remanding for determination of whether the judgment debtors established that they "intended to sell the[ir] house and use the proceeds to procure a new homestead" "once the [debtors] had *removed themselves from the premises*" (emphasis added)).

¶60    ATI notes that the Andersons represented during litigation in this case that they might not sell the Wisconsin property if they were unable to obtain a release of ATI's lien. ATI argues that this representation signaled a lack of intent to reoccupy the Wisconsin property as a homestead, under the reasoning in *Moore*. *See id.* at 455 ("[A] vague intent to return [to the homestead that] hinged upon the contingency that [the debtor's family] do[es] not sell the house is insufficient to establish the requisite intent to reoccupy the premises as a homestead."). ATI's argument is not well developed. In any case, the argument at a minimum depends on a premise that we have rejected. That premise is that there was evidence that

28

could reasonably support the inference that the Andersons had already established a new homestead in Iowa by the time they put the Wisconsin property up for sale. Further, the representation in itself does not change the analysis. It was simply an acknowledgement of a contingency (*i.e.*, the Andersons might fail to obtain a lien release in this case) that had not come to pass, which could play into future decisions that the Andersons might make. The mere possibility that an adverse ruling in this case might affect their plans does not constitute evidence that the Andersons did not maintain an intent to ultimately sell the Wisconsin property.

## CONCLUSION

¶61 For all of these reasons, we conclude that, assuming without deciding that the Andersons could have impaired their homestead exemptions with respect to the judgment after ATI docketed it, there is no genuine issue of material fact that could be resolved to show that the Andersons impaired their exemptions. Accordingly, we affirm summary judgment in the Andersons' favor.[13]

*By the Court.*—Order affirmed.

---

[13] We deny the Andersons' motion for costs and fees based on their allegation that ATI's appeal of the circuit court's summary judgment order is frivolous under WIS. STAT. RULE 809.25(3). The Andersons' motion rests on an argument that ATI or its counsel knew or should have known that the only time to determine whether a homestead exemption applies to a docketed judgment is the moment of docketing, and therefore all of ATI's arguments are frivolous given this purportedly dispositive legal principle. We do not address the moment-of-docketing issue, but based on our review of the briefs and case law cited by the parties we disagree with the Andersons that ATI's arguments are wholly frivolous.